# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## No. 23-3082

### UNITED STATES OF AMERICA,

#### Appellee

#### v.

### FIROZ PATEL,

#### Appellant.

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## APPELLANT'S MEMORANDUM OF LAW AND FACT

A. Jeff Ifrah, D.C. Bar No. 456661
Jacob F. Grubman, D.C. Bar No. 1510784
Ifrah Law
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20010
(202) 524-4140
*Counsel for Appellant Firoz Patel*

District Court No. 1:23-cr-00166

**Request for Oral Argument**

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

STATEMENT OF FACTS ............................................................................4

    I.      The Government's First Case Against Appellant .................................4

    II.     The Present Case ..........................................................................7

LEGAL STANDARD ...............................................................................9

ARGUMENT .........................................................................................11

    I.      The District Court Clearly Erred in its Assessment of the § 3142(g) Factors ....................................................................................11

          A.     Appellant's History and Characteristics Plainly Favor Pretrial Release .....................................................................12

          B.     The Court Mischaracterized the Nature and Circumstances of the Alleged Offense ...............................................................15

          C.     The Weight of the Evidence Is Not So Great as to Require Pretrial Detention .....................................................................18

    II.     The District Court Clearly Erred by Failing to Consider Available Release Conditions ..........................................................................20

CONCLUSION ......................................................................................22

## INTRODUCTION AND SUMMARY OF ARGUMENT

The District Court ordered the detention of the Appellant, Firoz Patel, despite the possibility of effective conditions to secure his appearance and his history of compliance. Appellant is charged with financial crimes and the Government, Magistrate Judge, and District Court all agreed that he poses no danger to the community. Therefore, the issues before the Court are solely whether (1) Appellant poses a serious risk of flight, and (2) any conditions would suffice to reasonably assure his appearance at trial.

After his detention hearing, the magistrate judge held that Appellant did not pose a flight risk and ordered his release on conditions.  The Government appealed and the District Court reversed, concluding that Appellant was a flight risk. While defense counsel raised the possibility of conditional release, the District Court's order does not acknowledge the possibility of an appearance bond or explain how the proposed conditions would be insufficient to "reasonably assure" Appellant's appearance in this case. Notably, in relation to a prior case before the U.S. District Court for the District of Columbia, now-Justice Ketanji Brown Jackson determined that similar conditions – specifically, a $300,000 appearance bond – were sufficient to reasonably assure Appellant's appearance to all necessary court proceedings. By failing to adequately consider whether such conditions would be appropriate in this

case, the District Court committed clear and reversible error that violated Appellant's rights and the strong presumption in favor of pretrial release.

The District Court also erred in its determination that Appellant poses a serious risk of flight. Application of the three relevant factors shows that Appellant is not a flight risk.

Appellant's history and characteristics show that he is not likely to flee. To the contrary, he can uniquely show that the nature and circumstances of the alleged offense do not render him a serious risk of flight, as he has appeared as necessary in a prior case involving more serious allegations. Even if the court determined that there was a likelihood of flight, its failure to consider whether conditions would *reasonably* assure Appellant's appearance constitutes clear error.

The nature of the offense does not suggest a flight risk. In his prior case before the District Court, Appellant faced charges of unlicensed money transmitting in an amount exceeding $250 million—by one Government account, more than *$1 billion*—leading the Government to calculate a potential sentence of 292 to 365 months of incarceration. Notwithstanding this far more serious potential prison term, Appellant was released pending trial, appeared as required, and self-surrendered for his term of incarceration. There is no reasonable basis for concluding he will do anything different in this matter. Certainly, the Government presented no evidence of any such difference. The District Court simply assumed the contrary.

Finally, the weight of the evidence is not so great that when confronted with this evidence, Appellant is likely to flee. To the contrary, Appellant has substantial defenses and expects to prevail on the charges if tried.  Appellant faces two charges in this matter pursuant to 18 U.S.C. §§ 1956(a)(1)(B)(i) (for money laundering) and 1957(a) (for engaging in a monetary transaction involving more than $10,000 in criminally derived property). The transaction at issue concerned non-U.S. assets that were not subject to the court's prior orders.  The Government has not alleged facts sufficient to support a conviction under either statute, so the weight of the evidence does not distinctly favor pretrial detention in this matter.

Based on these factors, Appellant is unlikely to flee. As such, the Court should direct Appellant's release.  Alternatively, the Court should direct the District Court to assess the possibility of applying conditions to Appellant's pretrial release, including setting an appearance bond (as was done in Appellant's prior case before the same court, in which he made all requisite appearances and self-surrendered for prison) or releasing Appellant to a third-party custodian (whom the Pretrial Services Agency for the District of Columbia ("Pretrial Services") approved as a potential custodian in this matter).

For these reasons, the Court should reverse the District Court's determination that no condition can reasonably assure Appellant's appearance in this matter. In the

alternative, the Court should remand for the District Court to consider conditional release in this case.

## STATEMENT OF FACTS

### I.     The Government's First Case Against Appellant

The present matter stems from the Government's prosecution of Appellant Firoz Patel in the District Court for the District of Columbia in March 2018. *See United States v. MH Pillars Ltd.*, No. 1:18-cr-00053 (D.D.C.) (hereinafter, "*MH Pillars*"). In that case, Appellant was indicted along with his brother, Ferhan Patel,[1] and their company, MH Pillars Ltd., the U.K. branch of their multinational money services business, branded Payza. *See generally MH Pillars*, ECF 1. The Government alleged that Firoz and Ferhan Patel "knowingly conspired to operate unlicensed money transmission businesses which transmitted over $250,000,000 throughout the United States and elsewhere." *Id.* at 8.

The *MH Pillars* history is relevant to the case now pending before this Court. Appellant was indicted in that case in March 2018. In part because he is a Canadian citizen and resident, Appellant was not arraigned until January 2019; his brother, Ferhan, was detained in April 2018. Notwithstanding Ferhan's Canadian citizenship and residency, the nature of the Government's case against the defendants, and the

---

[1] This filing refers to Appellant Firoz Patel as, "Appellant," or "Mr. Patel." Ferhan Patel will be identified by his full name or his first name.

4

evidence demonstrating that the defendants had operated an unlicensed money transmitting business in the United States, now-Justice Ketanji Brown Jackson ordered Ferhan's pretrial release. *See MH Pillars*, ECF 19. Specifically, Justice Jackson ordered that Ferhan be released into the custody of third-party custodian Nisar Ahmed, Ferhan Patel's brother-in-law and a resident of Long Island, New York. *Id.* Ferhan lived with Mr. Ahmed and his family for seven months and attended all necessary court appearances.

In January 2019, Appellant traveled to the United States for arraignment and pretrial detention proceedings. *MH Pillars*, ECF 49. Justice Jackson subsequently ordered Appellant's pretrial release (to his home in Canada) subject to a $300,000 appearance bond. Importantly, at the time, Appellant was facing charges of money laundering in an amount exceeding $250 million; in one account, the Government represented the charged conduct involved more than $1 billion, and the Government later calculated that Appellant was facing a prison term of 292 to 365 months. *Id.*, ECF 121 at 10. Justice Jackson nevertheless ordered his conditional pretrial release. In the ensuing weeks, Justice Jackson adjusted Ferhan Patel's pretrial release conditions, permitting him to return home after similarly posting an appearance bond. *Id.*, ECF 52.

Eighteen months passed between Appellant's pretrial release in January 2019 and his guilty plea in July 2020.  *Id.*, ECF 90. Pursuant to the plea agreement and

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Appellant and the Government agreed to a prison term of 20 to 52 months, *id.*, ECF 121 at 12, and he was ultimately sentenced to 36 months of incarceration, with a surrender date in February 2021, which was later postponed until May 2021 to accommodate Appellant's familial obligations. *Id.*, ECF 141. As part of the plea agreement, the defendants in *MH Pillars* also agreed to forfeit "any property, real or personal, involved in the commission of [the conspiracy], and any property traceable to such property," specifically including various funds that had previously been seized. *Id.*, ECF 132.

Just as they had complied with all appearance requirements, Firoz and Ferhan Patel attempted to enter the United States to self-surrender on the requisite date but were stopped at the border because of the judgment that had been entered against them. *See id.*, ECF 146. Following additional coordination with the Government and the court, the brothers were able to enter the country to self-surrender and commence their terms of incarceration.

Appellant was released from custody in April 2023, at which time he was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody for transportation back to Canada. After approximately 10 days in custody, Appellant was re-arrested on the present charges.

## II.     The Present Case

In the present matter, the Government alleges that on April 27, 2021, Appellant transferred 450 Bitcoin allegedly derived from Payza's operations between two cryptocurrency accounts. *See* ECF 18 at 3; *see also* ECF 5 (Indictment). The Government further alleges that Appellant concealed his identity in engaging in this transaction, although the Government does not allege that he concealed his ownership of the transferring account.  Appellant disputes these allegations.

While the present case was formally initiated via criminal complaint on April 25, 2023, the Government has been aware of the assets at issue since at least January 2022, when a federal magistrate issued a seizure warrant for the Bitcoin. *See* ECF 18 at 9. The Government initiated the present case only after Appellant's release from custody was imminent. On April 25, 2023, while Appellant was in ICE custody, the Government filed a criminal complaint, ECF 1, and Appellant was detained. A grand jury returned a sealed indictment on May 11, 2023. ECF 5.

On May 22, 2023, following briefing and a hearing, Magistrate Judge Meriweather ordered Appellant's pretrial release. ECF 19. Weighing the Bail Reform Act factors, Magistrate Judge Meriweather set conditions for Appellant's release, including supervision by Pretrial Services and a prohibition on non-household-related financial transactions. The conditions did not include an appearance bond, and Magistrate Judge Meriweather also declined to require Appellant's release into

7

the custody of Mr. Ahmed, who served as the third-party custodian for Ferhan Patel in the prior case.

The Government sought review of Magistrate Judge Meriweather's order. After a hearing on May 31, 2023, the District Court ordered Appellant's pretrial detention. ECF 22. Although Magistrate Judge Meriweather had determined that pretrial release without bond was appropriate in this matter, the District Court concluded that all three relevant factors under § 3142(g) favored pretrial detention. *Id.* at 4-6.

As defense counsel represented to Judge Friedrich at the hearing, during the period between Magistrate Judge Meriweather's order and the hearing before Judge Friedrich, Pretrial Services had interviewed and approved Nisar Ahmed as a potential third-party custodian. Although defense counsel posited Mr. Ahmed's appointment as a third-party custodian, the District Court's order does not explain why such a condition would be insufficient to reasonably assure Appellant's appearance as required. The order also does not acknowledge the possibility of ordering Appellant to pay an appearance bond, as Appellant suggested and as he was required to do in the prior case.

On the same day as the District Court issued its Order, Appellant filed a timely notice of appeal in the present case.

# LEGAL STANDARD

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This case represents "the norm."

The exception is kept appropriately narrow by the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, which provides that a court ordinarily must release an individual and establishes a strong presumption in favor of release:

> [T]he judicial officer *shall order the pretrial release of the person* on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

18 U.S.C. § 3142(b) (emphasis added).

"Detention until trial is relatively difficult to impose." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). Where a judicial officer determines that release on personal recognizance or upon the execution of an unsecured bond will not "reasonably assure" the defendant's appearance, the judicial officer "*shall* order the pretrial release of the person . . . subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c)(1) (emphasis added). Several enumerated conditions include release into "the custody of a

designated person" and execution of a "bail bond with solvent sureties." *Id.* §§ 3142(c)(1)(B)(i), (xii).

Pursuant to 18 U.S.C. § 3142(e)(1), the Bail Reform Act allows detention based upon "serious risk of flight"—the only grounds for detention asserted by the Government in this matter—only where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of" the defendant for further proceedings.  18 U.S.C. § 3142(e)(1). To assess this question, § 3142(g) identifies a set of four factors for the Court to consider, including: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence" against the defendant, (3) "the history and characteristics" of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

The Court's ultimate decision must trace back to the risk that the defendant will flee, regardless of how many factors turn in each direction: "Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). Further, "when the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a 'preponderance of the evidence.'" *United States v.*

10

*Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)). "That preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act or any others that the magistrate or judge might find useful—can 'reasonably' assure that the defendant will appear for trial." *Id.*

Several circuits have applied a "clear-error" standard in cases involving detention on the basis of risk of flight. *E.g.*, *United States v. Melendez-Carrion*, 820 F.2d 56, 61 (2d Cir. 1987). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Munchel*, 991 F.3d at 1282 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Remand, rather than reversal, may be proper if "it does not appear that the District Court considered substantial countervailing evidence that supported release when analyzing the detention factors." *Id.* (citing *United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir. 2011)).

## ARGUMENT

## I.  The District Court Clearly Erred in its Assessment of the § 3142(g) Factors

As required under the Bail Reform Act, the District Court's order includes a written statement of the four factors set forth under 18 U.S.C. § 3142(g). The District Court's analysis contains factual and logical errors such that its order requiring

Appellant's pretrial detention is clearly erroneous. Because the Court determined that the nature and seriousness of potential danger to the community is irrelevant to this matter, this brief addresses only the first three § 3142(g) factors.

### A.    Appellant's History and Characteristics Plainly Favor Pretrial Release

As described above, the District Court determined that "[t]he history and characteristics of [Appellant] favor detention." Order at 5. The record strongly contradicts the Court's determination with respect to this factor.

First, as the Court observes, Appellant is a citizen and resident of Canada. *Id.* The Court accordingly determined that pretrial release would be "highly risky for securing the defendant's appearance in Court." *Id.* But Appellant has a proven record of attending judicial proceedings. In *MH Pillars*, Appellant voluntarily traveled from Canada to the United States for arraignment, met all appearance requirements during the pendency of the case, and self-surrendered for a 36-month prison term. *See MH Pillars*, ECF 147.  Appellant's compliance with appearance requirements traces back further to a 2012 proceeding before the U.S. District Court for the Middle District of Tennessee, in which he was released pending trial on an appearance bond of $30,000; in that case, too, Appellant consistently appeared as required. *See United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 26.

In the face of this evidence that Appellant's history and characteristics weigh in favor of pretrial release, the District Court nonetheless "remain[ed] persuaded that

12

the defendant's access to substantial cryptocurrency resources" constitutes a characteristic leaning in favor of detention. But nothing about Appellant's circumstances—his residency, his citizenship, and his finances—has changed in a manner that *supports* pretrial detention. If anything, the present case illustrates that even with access to substantial cryptocurrency funds, Appellant did not flee when facing far more serious criminal charges. In this respect, insofar as Appellant's history is relevant to the issue at hand—whether Appellant is a serious risk of flight such that no conditions can reasonably assure his appearance—that history supports pretrial release.

Furthermore, the District Court misapplies the requirement that it consider, in relation to the defendant's history and characteristics, "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence." 18 U.S.C. § 3142(g)(3)(B). Although the transaction underlying the present case did occur while Appellant was awaiting his self-surrender date, Appellant does not believe the transaction violated any U.S. law because it did not involve any proceeds of Payza's U.S. operations. In this respect, the Court's determination assumes the outcome of a case that is hotly contested. In doing so, the trial court violated 18 U.S.C. § 3142(j) and Appellant's Constitutional right to a presumption of innocence.

More importantly, the Court does not explain why the timing of this transaction indicates that Appellant is a serious risk of flight. Indeed, the trial court appears to have heavily weighed this factor – characterizing the charged offense as "egregious" – as if there were a dispute about public safety (which there is not). Order at 6.  In another context, § 3142(g)(3) might be highly relevant—for example, if an individual is convicted of a violent crime and commits a second violent offense while awaiting sentencing, the defendant's history and characteristics might suggest a proclivity for violent behavior such that no conditions can reasonably assure the safety of the community. Here, though, the timing of the alleged offense bears no relation to the likelihood that Appellant will appear as required.

To the extent the Court seeks to restrict Appellant from engaging in further financial transactions pending trial, it can set such a prohibition in considering the "least restrictive further condition" that will reasonably assure Appellant's appearance. *See* 18 U.S.C. § 3142(c)(1).  Indeed, Magistrate Judge Meriweather ordered such a condition without objection from Appellant.

Certain factors, including Appellant's citizenship and residency, lean against pretrial release in this matter. But this Court has observed, even if "there is evidence to support" the District Court's order, the court committed clear error if this Court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Munchel*, 991 F.3d at 1282.  Because Appellant has a history

14

of compliance, his foreign citizenship is by no means a controlling factor. Here, the District Court committed clear error in relation to its analysis of Appellant's history and characteristics.

### B.    The Court Mischaracterized the Nature and Circumstances of the Alleged Offense

The nature and circumstances of an alleged offense are relevant to the question of whether a defendant is a serious risk of flight because defendants might be more likely to flee when facing charges that are particularly severe. *See, e.g.*, *White v. United States*, 412 F.2d 145, 147 (D.C. Cir. 1968) (the potential penalty has "some relevance," but is not dispositive if other factors weigh in favor of pretrial release). While the District Court determined that this factor weighs in favor of detention, Order at 4, it did not explain the basis for its conclusion. Rather, the District Court seems to be basing detention on her own assumptions about the case. Those assumptions are insufficient to overcome Appellant's presumption of innocence and history of compliance. The District Court clearly erred in its analysis of this factor.

The present case centers around the transfer of 450 Bitcoin between cryptocurrency wallets. ECF 5 at 1. At the time of the transfer, the assets at issue were valued at approximately $24 million. *See* ECF 11 at 2. Specifically, the Government alleges that Appellant transferred the assets from one Bitcoin wallet registered in his name to a Blockchain.com wallet bearing his father's name. ECF

18 at 11.[2] The Government has not alleged that Appellant attempted to conceal his control of the transferring account.

The District Court exaggerates certain aspects of the alleged offense that allegedly present aggravating circumstances. For example, the District Court writes that Appellant "took elaborate steps to conceal his own role" in the transaction at issue, Order at 4 (quoting *United States v. Otunyo*, No. 18-251, 2020 WL 2065041, at *4 (D.D.C. Apr. 28, 2020)), and "used highly technical means in an effort to evade detection by authorities," *id.* (citing *United States v. Bikundi*, 47 F. Supp. 3d 131, 134 (D.D.C. 2014)). But the Government does not allege that Appellant concealed his ownership of the transferring account, for which he submitted all necessary know-your-customer documentation; he did not conceal his role in the transaction. In addition, the means used in causing this transaction are not "highly technical"—Appellant used a website to transfer funds between accounts and then communicated with that platform using his personal email address.  This is an everyday occurrence in our current, technologically driven economy. There are approximately 46 million U.S. crypto users and approximately 420 million worldwide.[3] Designating a transfer

---

[2] To the extent the Government views any prior transfers as somehow improper, it has not charged any offense in relation to those transfers. *See* ECF 5.

[3] *Cryptocurrency Ownership Data*, TRIPLE A (2023), https://triple-a.io/crypto-ownership-data/.

of Bitcoin as highly technical – and as implying a risk of flight – makes no sense whatsoever.

Furthermore, the District Court did not consider whether the circumstances of the alleged offense render Appellant a serious risk of flight. In *Bikundi*, the District Court wrote, "The government has a valid basis for concern that '[t]he charges against the defendant, together with access to potentially significant amounts of financial resources, provide a strong incentive to flee the United States.'" 47 F. Supp. 3d at 134. There was no such finding in this case; the nature and circumstances of the offense do not provide Appellant a strong incentive to flee the United States. To conclude otherwise would be to assume that every criminal defendant poses a risk of flight due to the possibility of incarceration, but the presumption runs the other direction.

The District Court also erred in concluding that the charges in this case presented a greater risk of flight than the earlier case based on an obviously flawed comparison of potential sentences. The District Court correctly observed that Appellant's prior offense could contribute to the applicable U.S. Sentencing Guidelines calculation if this case reaches sentencing. The Court's risk of flight analysis depends on the rationale that Appellant's prospective prison term "could well be longer than the 36-month sentence previously imposed," such that Appellant is likelier to flee in this case than in the 2018 matter. Order at 6. But that logic is

impermissibly flawed. The District Court sought to compare the Government's maximal sentencing calculations in this matter with the term Appellant received in the prior case *according to a plea agreement*. When Appellant was granted pretrial release previously, he was facing a sentence of 292 to 365 months of incarceration, *not* the 36 months he ultimately received. The Government now asserts that he is facing a substantially *shorter* term than in the prior case—135 to 188 months. Stated differently, the potential sentence in this case is substantially shorter than in the prior case where he appeared as required. This demonstrates that the nature of the charges is unlikely to cause Appellant to flee.

Ultimately, even accepting the Government's account of the alleged offense, the District Court did not explain why, in light of Appellant's record of appearing in court, the nature and circumstances of this offense render him a serious risk of flight to such a great extent that no conditions could "reasonably assure" his appearance as required. Accordingly, the District Court committed clear error in determining that this factor weighs in favor of pretrial detention.

### C.    The Weight of the Evidence Is Not So Great as to Require Pretrial Detention

With respect to this factor, the District Court concluded merely that "the circumstantial evidence [in this matter] is persuasive." Order at 5. The Court acknowledges that "the parties dispute the government's ability to trace the 450 Bitcoin" to unlawful conduct. *Id.* But in concluding that the weight of the evidence

favors detention here, the Court writes, in full: "Patel transferred roughly $24 million of Bitcoin while he awaited self-surrender on a sentence that included a sweeping forfeiture order tied to his prior business, which itself involved cryptocurrency operations." *Id.*

The Court does not accurately summarize the evidentiary dispute between Appellant and the Government. The court writes that "the parties dispute the government's ability to trace the 450 Bitcoin to Payza's proceeds." *Id.* But before the District Court, Appellant instead argued that the Government could not trace these assets to Payza's *U.S. operations*. ECF 20 at 8-10. Tracing the assets to U.S. operations is critical to the Government's case, as the charges in this matter relate to allegations of unlicensed money transmitting, see *id.* at 9; inherently, they relate to operations that might be subject to a U.S. money transmitting license. The Government has not alleged that these assets involved U.S. customers or financial institutions in a manner supporting charges under the statutes at issue here, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a). *Id.* Nor has the Government disputed that these transfers involved assets held in foreign accounts. Thus, there are substantial questions going to the merits and jurisdiction in this matter.

At minimum, the court failed to assess properly whether the weight of this evidence could lead Appellant to flee. In another case, particularly strong evidence against a criminal defendant might motivate him to flee, as strong evidence makes it

19

likely that a defendant will be convicted and face criminal penalties. Here, even if the Government alleged evidence meeting the elements of the charged offenses—which it has not—Appellant would be unlikely to flee as shown by his appearance in a far more significant case.

## II. The District Court Clearly Erred by Failing to Consider Available Release Conditions

The District Court committed clear error in ordering Appellant's pretrial detention without assessing the sufficiency of proposed release conditions. Even if a court concludes that there is a risk of flight, the Bail Reform Act requires district courts to "determine[e] whether there are conditions of release that will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(f). Indeed, to order pretrial detention due to risk of flight, the court must also find that there are *no* conditions that could reasonably assure the defendant's presence at trial. *See United States v. Berrios-Berrios*, 791 F.2d 246, 250–51 (2d Cir. 1986). In *U.S. v. Xulam*, the Court revoked the District Court's order of detention, holding that that it had failed to "*fully explore*[] the commitments offered by [the defendant's] witnesses or the [the defendant's] proffer that he was willing to abide by whatever conditions the court imposed," to reasonably assure his appearance. 84 F.3d 441, 443 (D.C. Cir. 1996) (emphasis added).

In this case, the District Court clearly erred by failing to consider proposed conditions of release, including conditions similar to those that Justice Jackson found

adequate in *MH Pillars*, that would have reasonably assured Appellant's appearance. The District Court acknowledged that Appellant has suggested "an alternative set of conditions placing him in Long Island" with Mr. Ahmed. Order at 6. Rather than examining the sufficiency of that or alternative conditions, the District Court focused on Appellant's alleged culpability, access to since seized cryptocurrency, and an unsubstantiated "willingness to defy the Court." *Id.*

The alleged cryptocurrency to which Appellant allegedly has access already has been seized. Ironically, Appellant had far greater access to cryptocurrency assets during the pendency of *MH Pillars*; in which he appeared without issue. The District Court also found, without evidence, that Appellant had an "ability and willingness to defy the Court." But in so ruling, the Court assumed that Appellant is guilty in violation of his rights and that there was some clear order applicable to the transaction. Neither are true. And even if the cryptocurrency transaction was illegal, it has no bearing on whether Appellant's appearance could be assured reasonably through conditions — the only question to be decided by the courts.

Just as Appellant complied and voluntarily appeared in *MH Pillars*, there is ample evidence that Appellant would appear as required even without an appearance bond; Magistrate Judge Meriweather concluded that no bond was necessary. Setting the same condition in the present case would be more than sufficient to "reasonably assure" Appellant's appearance as required, just as it was sufficient to reasonably

assure his appearance in the prior case. But the District Court's Order does not acknowledge the possibility of a bond in this matter.

Similarly, the District Court committed clear error by insufficiently considering the possibility of releasing Appellant into the custody of Mr. Ahmed. As noted, Mr. Ahmed served as a third-party custodian for Ferhan Patel in *MH Pillars* and volunteered to do so for Appellant in this matter. In the prior case, Ferhan Patel lived with Mr. Ahmed for months without incident—as illustrated by the fact that the District Court later adjusted Ferhan Patel's pretrial release conditions and allowed him to return to Canada pending trial. Here, again, there is substantial evidence that (i) Appellant would appear in this matter even absent third-party custodian supervision with or without a bond, and (ii) releasing Appellant into Mr. Ahmed's custody would undoubtedly be sufficient to "reasonably assure" Appellant's appearance as required.

It was clear error for the District Court to order Appellant's pretrial detention without assessing the sufficiency of these conditions that Appellant had proposed to the court, particularly the appearance bond.

## **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that the Court reverse the District Court's order revoking Appellant's previous release order or, in the alternative, remand for reconsideration.

Dated: June 26, 2023                    Respectfully submitted

                                        IFRAH LAW

                                        */s/ A. Jeff Ifrah*
                                        A. Jeff Ifrah (D.C. Bar No. 456661)
                                        Jacob F. Grubman (D.C. Bar No. 1510784)
                                        1717 Pennsylvania Ave. NW
                                        Ste. 650
                                        Washington, D.C. 20010
                                        (202) 524-4140
                                        jeff@ifrahlaw.com
                                        jgrubman@ifrahlaw.com

                                        *Counsel for Appellant Firoz Patel*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 26th day of June 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing to counsel of record in this matter.

Dated: June 26, 2023

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah
*Counsel for Appellant Firoz Patel*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This memorandum of law and fact complies with type-volume limits because it contains 5,101 words.

2.     This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: June 26, 2023                          */s/ A. Jeff Ifrah*
                                                           A. Jeff Ifrah
                                                           *Counsel for Appellant Firoz Patel*

-

25