# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

FIROZ PATEL,

      *Defendant.*

No. 23-cr-166 (DLF)

## ORDER

Before the Court is the government's request for the Court to "hear an appeal to review and overturn the Magistrate Judge's denial of the Government's motion for pretrial detention," Dkt. 18 at 1. The Court construes the government's request as a "motion for revocation of the order" of the magistrate judge to release the defendant, Firoz Patel. 18 U.S.C. § 3145(a)(1).

Magistrate Judge Meriweather previously determined that Patel should be released pending trial on the special conditions that he submit to weekly supervision by Pretrial Services, not travel outside Canada or the United States, verify his address, and "[n]ot engage in any financial transactions except for those that deal with standard household expenses." Order Setting Conditions of Release, Dkt. 19. The Court has reviewed the entire record, including arguments raised in the briefs—both the government's brief, Dkt. 18, and the defendant's response, Dkt. 20—and during the hearing held before the magistrate judge on May 22, 2023, as well as a hearing before the Court on May 30, 2023.

**I.     BACKGROUND**

On July 16, 2020, Patel pleaded guilty to a single count of conspiracy to commit offenses against the United States. Minute Entry of July 16, 2020, *United States v. MH Pillars Ltd.*, 18-cr-53 (D.D.C.); *see* Superseding Information, *MH Pillars*, Dkt. 81. Patel admitted that the business

he founded, AlertPay, "was transmitting illegal proceeds" and bypassing Know Your Customer ("KYC") protocols, and that he knew this "based in part by statements made by co-conspirators, as well as his review of customer data." Statement of Offense ¶¶ 7–9, *MH Pillars*, Dkt. 91. After drawing attention from regulators, Patel "told others that AlertPay would rebrand itself" as MH Pillars, doing business as Payza. Aff. of Special Agent Eugene Sveum at 13, Dkt. 1-1. Payza, again drawing attention from regulators, profited from customers who were "1) primarily merchants operating Ponzi and Pyramid schemes, High Yield Investment Programs, Money Cyclers, and Multi-Level-Marketing schemes with no products; 2) and the related victims of such schemes." *Id.* at 14.

On November 10, 2020, in connection with the Payza conspiracy, Patel was sentenced to thirty-six months of incarceration followed by twenty-four months of supervised release. *See* Judgment, *MH Pillars*, Dkt. 136. He was also ordered to forfeit to the United States "any property, real or personal, involved in the commission" of the crime of conviction, including several million dollars of specific identified property. Forfeiture Order at 4, *MH Pillars*, Dkt. 132.

After sentencing but before the defendant's self-surrender date—which the defendant successfully moved to delay by ninety days, *see* Mot. to Delay Self-Surrender Date, *MH Pillars*, Dkt. 141; Order, Dkt. 143—the defendant allegedly transferred into an account he created exactly 450 Bitcoin (then worth approximately $24 million) constituting proceeds of Payza. *See* Sveum Aff. at 1–2. Specifically, the government contends that "[o]n April 25, 2021, an interest-bearing account was opened in the name of Musa Patel, the defendant's father, at Blockchain.com," which is "a virtual currency exchange based outside the United States with operations in the United Kingdom." Gov't's Mot. at 6. The account was allegedly opened using the defendant's phone number and email and registered to a Payza-affiliated address in Belize City, Belize. *Id.* And it

2

was accessed from an IP address in Canada, where the defendant resided.  *Id.*  After back-and-forth communications between Blockchain.com and a user who was allegedly the defendant, Blockchain.com froze the account.  *Id.* at 7–8.  The defendant then allegedly continued to seek assistance unfreezing the account in a progressively more urgent matter as his ultimate self-surrender date in June 2021 approached.  *Id.* at 8.  And he eventually sued in his own name in a United Kingdom court in an attempt to reclaim the funds.  *Id.*

This criminal case arises from that Bitcoin transfer.  On May 11, 2023, a grand jury charged the defendant with one count of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and one count of engaging in monetary transactions in property derived from specified unlawful activity, 18 U.S.C. § 1957(a).  Indictment, Dkt. 5.

## II.     LEGAL STANDARD

"The Bail Reform Act . . . provides that a judge 'shall order' the 'detention of the [defendant] before trial,' if after a detention hearing . . . and consideration of 'the available information concerning' enumerated factors, . . . 'the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *United States v. Howard*, No. 20-mag-181, 2020 WL 5642288, at *2 (D.D.C. Sept. 21, 2020) (quoting 18 U.S.C. § 3142(e)(1), (f), and (g)).  In determining whether any combination of conditions will reasonably assure the appearance of the defendant, the Court must consider four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  The government must prove flight risk by a preponderance of the evidence.  *United States v. Xulam*,

3

84 F.3d 441, 442 (D.C. Cir. 1996). The Court applies a *de novo* standard of review when evaluating a magistrate judge's detention order, *see United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017), and it "is free to use in its analysis any evidence or reasons relied on by the magistrate judge" as well as "hear additional evidence and rely on its own reasons." *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 18–19 (D.D.C. 2011)). The Court will evaluate each statutory factor below.

### III. ANALYSIS

#### 1. The Nature and Circumstances of the Offense

The nature and circumstances of the offense weigh in favor of detention. To begin with, the charged conspiracy involved sophisticated, deceptive means. The defendant "took elaborate steps to conceal his own role in the . . . schemes," *United States v. Otunyo*, No. 18-251, 2020 WL 2065041, at *4 (D.D.C. Apr. 28, 2020), and used highly technical means in an effort to evade detection by authorities, *see United States v. Bikundi*, 47 F. Supp. 3d 131, 134 (D.D.C. 2014). The charged conduct thus suggests the defendant's ability and willingness to marshal substantial financial resources for criminal purposes. Moreover, the alleged Bitcoin transfer here is particularly egregious—and weighs in favor of a finding that the defendant may attempt to avoid appearing in court—because it took place while the defendant was awaiting, on his own motion, the self-surrender date for his prior, related criminal offense. The defendant was ordered to forfeit all property involved in the Payza conspiracy, and while awaiting his report date to prison, he allegedly schemed to move the property elsewhere.

Accordingly, this factor weighs in favor of detention.

4

**2. The Weight of the Evidence**

The weight of the evidence in this case is also strong. Although the parties dispute the government's ability to trace the 450 Bitcoin to Payza's proceeds, *see* Mot. at 22; Response at 8–9, at a minimum, the circumstantial evidence is persuasive. Patel transferred roughly $24 million of Bitcoin while he awaited self-surrender on a sentence that included a sweeping forfeiture order tied to his prior business, which itself involved cryptocurrency operations, *see* Sveum Aff. at 23. "If the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community—then the second factor will help meet the government's burden of persuasion." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

**3. The History and Characteristics of the Person**

The history and characteristics of the defendant also favor detention. Notably, by statute, the Court must include in this inquiry "whether, at the time of the current offense . . . the person was . . . on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law." 18 U.S.C. §3142(g)(3)(B). That circumstance is precisely that of the defendant here at the time of his alleged crime. Indeed, the defendant exploited the Court's prior willingness to delay his release date in order to commit the alleged crimes here.

Additionally, Patel is a citizen of Canada with clear, proven access to substantial resources in the form of cryptocurrency. The magistrate judge declined to impose a condition seizing his passport because it would presumably be required for Patel to travel between Canada and the United States. The magistrate judge also declined to impose any GPS tracking conditions based on the inability to impose such conditions abroad. That makes release to Canada highly risky for securing the defendant's appearance in Court. Patel briefly suggests an alternative set of

5

conditions placing him in Long Island with a family friend as third-party custodian. Response at 10 n.5. But the Court remains persuaded that the defendant's access to substantial cryptocurrency resources, as well as his ability and willingness to defy the Court, would make this condition insufficient to reasonably assure Patel's appearance.

Finally, Patel's argument that he should be released pending trial now because he was released in his last case before this Court misses the mark. True, Patel was not detained pending his last guilty plea, and he made his required court appearances in that case. But as alleged here, Patel did, at the very time he was allowed to remain free pending his self-surrender, attempt to evade the obligations of his sentence. Additionally, given that this prior offense is now an entry in Patel's criminal history if and when the Court arrives at sentencing in this case, the prison term Patel may face this time could well be longer than the 36-month sentence previously imposed.

4. **The Nature and Seriousness of the Danger to the Community**

Finally, the nature and seriousness of any danger that would be posed to the community does not affect the Court's analysis with respect to Patel's risk of flight.

## CONCLUSION

Based on consideration of the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance" of the defendant as required if the defendant were to be released, *see id.* § 3142(e). Accordingly, it is hereby

**ORDERED** that the government's motion for revocation, Dkt. 18, is **GRANTED**. The defendant is ordered detained pending trial.

**SO ORDERED.**

May 31, 2023

*(signature)*
DABNEY L. FRIEDRICH
United States District Judge

7