ORAL ARGUMENT NOT YET SCHEDULED

APPELLEE'S MEMORANDUM OF LAW AND FACT

————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

No. 23-3082

————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

FIROZ PATEL,                                Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
CHRISTOPHER B. BROWN
ARVIND K. LAL
* KEVIN BIRNEY
D.C. Bar #1029424
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Kevin.Birney@usdoj.gov
(202) 252-6829

23-cr-166 (DLF)

# INTRODUCTION

On April 25, 2021, while awaiting self-surrender to begin his sentence for operating an illegal money-laundering business, appellant and Canadian resident Firoz Patel transferred roughly $24 million derived from that illegal business into an overseas account. After the funds were frozen, and as Patel's self-surrender date approached, he became increasingly frantic in his attempts to reacquire control of the funds. Patel, who is charged with criminal offenses arising from his attempt to hide those illegal funds, now appeals the district court's order denying his request for release from detention pending trial under the Bail Reform Act. Because the district court did not clearly err in finding that no condition or combination of conditions will reasonably assure Patel's return to court, the district court's order should be affirmed.

# BACKGROUND

## Procedural History

On April 25, 2023, the government charged Patel by complaint with the laundering of monetary instruments, 18 U.S.C. § 1956(a)(1)(B)(i), and engaging in monetary transactions in property derived from specified

unlawful activity, 18 U.S.C. § 1957(a). See Docket for *United States v. Patel*, 23-cr-166 (DLF) ("ECF"), ECF 1. On May 11, 2023, Patel was charged by indictment with the same two counts, along with a forfeiture allegation (ECF 5).

Patel was presented in the U.S. District Court for the District of Massachusetts and then transported to the District of Columbia, where the government moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A) (ECF 18 at 1; ECF 11 at 1). After a hearing on May 22, 2023, Magistrate Judge Robin M. Meriweather denied the government's motion and released Patel to his home in Canada with conditions, including that Patel had to report weekly by phone to the Pretrial Services Agency for the District of Columbia (PSA), not travel outside of Canada or the United States, and refrain from any financial transactions except standard household expenses (ECF 18 at 2; ECF 19). Judge Meriweather did not order Patel to surrender his Canadian passport or submit to GPS monitoring (ECF 19).

The district court stayed the release order (ECF Minute Order May 23, 2023), and the government filed a motion to revoke it (ECF 18). Patel opposed (ECF 20). After a hearing, the Honorable Dabney L. Friedrich

granted the government's motion in a written order on May 31, 2023, and ordered that Patel be detained pending trial (Appellant Exhibit C (App. Ex. C)). Patel filed a timely notice of appeal (ECF 24).

## The Government's Proffer[1]

### *Patel's Prior Case*

On November 10, 2020, the district court sentenced Patel to 36 months of imprisonment for his role in operating Payza, an illegal online money-transmitting business responsible for transmitting more than $250 million in transactions (ECF 11 at 1). Criminals used Payza as a conduit to launder illicit proceeds, especially those from Ponzi schemes (*id.* at 2). The company was based in Canada, but it transmitted funds on behalf of users throughout the United States (*id.*). Patel operated the company along with his brother (*id.*). During his guilty plea to conspiracy to commit offenses against the United States, Patel admitted that he knew that Payza was transmitting illegal proceeds (App. Ex. C at 1-2). As part of Patel's sentence, he agreed to forfeit more than $4.6 million in

---

[1] The Bail Reform Act "permit[s] the [g]overnment to proceed by way of proffer in lieu of presenting live witnesses at a pretrial detention hearing." *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

funds seized from Payza, as well as "any property, real or personal," that was "involved in" the operation of Payza (ECF 11 at 1). The district court permitted Patel to delay his self-surrender date post-sentencing, and Patel self-surrendered on June 11, 2021 (*id.* at 1, 4).

### *The Instant Offense*

On April 25, 2021, between Patel's sentencing and self-surrender, an account was opened with Blockchain.com in the name of Patel's father, Musa Patel (ECF 11 at 4). Blockchain.com is a virtual currency exchange based outside the United States with operations in the United Kingdom (*id.*). The account was opened with appellant Patel's phone number and email address (*id.*). It was also registered to an address in Belize City, Belize (*id.*). Appellant Patel had previously used that address to incorporate at least six shell companies in connection with Payza (*id.* at 4-5). In addition, the account was initially accessed from an address in Canada where Patel was residing (*id.* at 5).

Two days later, a deposit of 450 Bitcoin (BTC)—the majority of which was derived from Payza's operations and which was valued at over $24 million at the time—was deposited into the account (ECF 11 at 1-2, 5). When Blockchain.com sent an email to the email address that had

opened the account because it flagged the transaction as suspicious, an individual purporting to be "Vineet Tewari," who had been employed by a Payza subsidiary in India, responded (*id.* at 5-6). Patel had previously used Payza employee names when opening businesses and violating the law (*id.* at 6).

After Blockchain.com froze the account, and as Patel's self-surrender date neared, the account owner's emails became increasingly confrontational (ECF 11 at 6-7). The owner demanded that Blockchain return the frozen funds (*id.* at 7). The IP address used to access the email account was the same IP address that Patel used to access another account in his true name (*id.* at 6-7). In one of the messages, the sender signed the email with "F," which was Patel's customary sign-off (*id.* at 7). After Patel's self-surrender, he filed a claim in his own name in a UK court against Blockchain.com, thereby abandoning any pretense that the funds belonged to anyone else (*id.* at 8). On January 11, 2022, a U.S. Magistrate Judge issued a seizure warrant for the Bitcoin that Patel had transferred to Blockchain (*id.* at 8). The government alleged that Patel transferred the Bitcoin in order to conceal and shield the Payza-derived

funds from forfeiture in his criminal case while he served his sentence (*id.* at 2).

## The Detention Hearings

At Patel's initial appearance on May 17, the government based its detention request on the ground that Patel "poses a serious risk of flight" (Transcript of proceedings on May 17, 2023, attached as Government Exhibit A, at 9). It noted that Patel was "a foreign citizen with no real ties to the United States" and that his actions "cast[] serious doubt about his ability to comply with conditions of release" (*id.* at 9-10).

At the May 22 detention hearing before Judge Meriweather, the government further explained that Patel had "flowed" the Bitcoin through "multiple cryptocurrency wallets" before the funds reached Blockchain.com, showing "a level of sophisticated deceptiveness" that indicated that the district court could not trust any assurances that Patel would make concerning his release (Appellant Exhibit A (App. Ex. A) at 8-9). The government also alleged that Patel had additional

cryptocurrency in private wallets,[2] along with bank accounts in multiple countries (*id.* at 11). All told, Patel had access to millions of dollars, which would be "sufficient to finance his flight away from prosecution" (*id.*).

PSA concurred with the government that there were no conditions or combination of conditions that could reasonably assure Patel's appearance in court (App. Ex. A at 20). It further noted that it could not monitor Patel via GPS in Canada and that there "would be a concern of risk of flight" should Patel be released there (*id.*).

Judge Meriweather found that the nature and circumstances of the offense weighed in favor of detention (App. Ex. A at 26). Patel had "scheme[d] to hide money from the Court and the government" while charges were pending, evidencing "deception" and "suggest[ing] a risk of flight" (*id.*). The "strong" evidence of Patel's offense also favored detention (*id.*). But Judge Meriweather found that Patel's history and

---

[2] A "wallet" is a means used to store Bitcoin that is similar to a virtual account (ECF 11 at 9 n.2). A private, or "unhosted," wallet is a wallet held exclusively by the Bitcoin's owner, as opposed to a "hosted wallet," which is an account held by a third-party financial institution. *See, e.g.*, *In the Matter of the Search of One Address in Washington, D.C., Under Rule 41*, 512 F. Supp. 3d 23, 26 (D.D.C. 2021). Bitcoin in a private wallet "is like cash in a personal safe or hidden under the mattress, while BTC in a hosted wallet is like money in a bank account." *Id.* at 26 n.3.

characteristics did not favor detention because, although Patel had access to substantial reserves of currency and no real ties to the United States, he had also appeared in court in prior cases (*id.* at 26-27). Nor did the fourth factor favor detention because the government had not alleged that Patel posed a danger to the community (*id.* at 27-28). After balancing these factors, Judge Meriweather determined that Patel should be released (*id.* at 28).

At the May 30 hearing before Judge Friedrich, the government argued that Patel's prior appearances in court had little relevance because he had subsequently engaged in the Bitcoin transaction while on release (Appellant Exhibit B (App. Ex. B) at 3-4). After hearing from both parties regarding the strength of the evidence and Patel's characteristics, Judge Friedrich took the matter under advisement (*id.* at 7-23).

## The District Court's Order

A day after the May 30 hearing, Judge Friedrich revoked Judge Meriweather's decision and ordered that Patel be detained pending trial on the ground that there were no conditions or combination of conditions that would reasonably assure Patel's appearance in court (App. Ex. C at 6). *See* 18 U.S.C. § 3142(e). She first found, as had Judge Meriweather,

8

that the nature and circumstances of the offense favored detention (App. Ex. C at 4). Judge Friedrich noted that Patel's scheme "involved sophisticated, deceptive means" and "used highly technical terms in an effort to evade detection by authorities" (*id.*). That conduct suggested that Patel had the "ability and willingness to marshal substantial financial resources for criminal purposes" (*id.*). Moreover, the Bitcoin transfer was "particularly egregious" and "weigh[ed] in favor of a finding that [Patel] may attempt to avoid appearing in court" because "it took place while [Patel] was awaiting, on his own motion, the self-surrender date for his prior, related criminal offense" (*id.*). Patel had been ordered to forfeit all property involved in the Payza conspiracy, yet he had allegedly schemed to move that property elsewhere while awaiting his prison report date (*id.*).

Judge Friedrich also agreed with Judge Meriweather in finding that the weight of the evidence against Patel was "strong" (App. Ex. C at 5). She acknowledged that the parties disputed whether the Bitcoin could be traced to Payza's illegal proceeds but found that "at a minimum, the circumstantial evidence is persuasive" (*id.*). Patel had transferred about $24 million of Bitcoin "while he awaited self-surrender on a sentence that

included a sweeping forfeiture order tied to his prior business, which itself involved cryptocurrency operations" (*id.*). The district court accordingly found that the weight of the evidence also favored detention (*id.*).

Next, Judge Friedrich analyzed Patel's history and characteristics, finding that they too weighed in favor of the government's motion (App. Ex. C at 5). Notably, Patel was on release pending completion of his sentence when he allegedly committed the instant crime (*id.*). *See* 18 U.S.C. § 3142(g)(3)(B) (requiring the court to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law"). Indeed, as Judge Friedrich found, Patel "exploited the Court's prior willingness to delay his release date in order to commit the alleged crimes" (App. Ex. C at 5). Moreover, Patel is a Canadian citizen with "clear, proven access" to substantial amounts of cryptocurrency (*id.*). Judge Meriweather's decision to let Patel keep his passport while declining to impose GPS monitoring made it "highly risky" that Patel's appearance in court could be secured (*id.*). The district court specifically

rejected Patel's suggestion that he stay with a friend in Long Island, noting that Patel's "access to substantial cryptocurrency resources, as well as his ability and willingness to defy the Court, would make this condition insufficient to reasonably assure Patel's appearance" (*id.* at 5-6).

Judge Friedrich also rejected Patel's argument that he should be released in this case because he was released in his last one (App. Ex. C at 6). Although Patel attended court hearings in his prior case, he was attempting to evade the obligations of his sentence while being permitted to remain free pending his self-surrender (*id.*). In addition, given that Patel's prior offense now was an entry in his criminal history, he could well face a longer sentence in this case than the 36-month sentence he received in his prior one (*id.*).[3]

---

[3] Regarding the last factor in 18 U.S.C. § 3142(g), the district court found that "the nature and seriousness of any danger that would be posed to the community does not affect the Court's analysis with respect to Patel's risk of flight" (App. Ex. C at 6).

### ARGUMENT

## A.    Standard of Review and Applicable Legal Principles

"[T]he [district] court 'shall order' a defendant detained before trial if it 'finds that no condition or combination or conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(e)). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). With respect to flight risk, the court must consider three factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; and (3) the history and characteristics of the person. 18 U.S.C. § 3142(g).

The government must prove risk of flight by a preponderance of the evidence. *Vasquez-Benitez*, 919 F.3d at 551. This Court reviews the district court's findings for clear error. *Munchel*, 991 F.3d at 1282. "The clear error standard applies not only to the factual predicates underlying the district court's decision, but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by [a]

defendant's release." *United States v. Hale-Cusanelli*, 3 F.4th 449, 454-55 (D.C. Cir. 2021) (internal quotation marks omitted). Under the clear-error standard, this Court does not "weigh each piece of evidence in isolation" but "consider[s] the evidence taken as a whole." *United States v. Manafort*, 897 F.3d 340, 347 (D.C. Cir. 2018) (citation omitted). Clear-error review is "highly deferential." *Hale-Cusanelli*, 3 F.4th at 455. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## B. The District Court Did Not Clearly Err in Ordering Patel's Detention as a Flight Risk.

### 1. Patel's history and characteristics favor detention.

The district court correctly found that Patel's history and characteristics favor detention. Patel tried to hide funds while awaiting his self-surrender date to begin a sentence for running a company that hid illegal funds. The district court had to consider that context because Patel was on "release pending . . . completion of sentence" when he committed his new crime. 18 U.S.C. § 3142(g)(3)(B). Despite the fact that

13

Patel was waiting to begin his sentence on conduct related to hiding illicit funds and was subject to a forfeiture order, he attempted to place approximately $24 million of Bitcoin beyond the reach of the government and the court. As the district court found, Patel "exploited the Court's prior willingness to delay his release date in order to commit the alleged crimes here" (App. Ex. C at 5). That betrayal of the court's trust strongly suggests that Patel would not hesitate to violate other court-imposed conditions. *See, e.g.*, *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010) (finding that the defendant's history and characteristics weighed against release because he "committed the alleged [attempted securities fraud] while on bail, having thereby deceived the court as to his willingness to conform his conduct to law").

Patel argues (at 13) that the court "misapplie[d]" the "history and characteristics" factor because he "hotly contest[s]" whether the transaction violated any U.S. law "because it did not involve any proceeds of Payza's U.S. operations." But 18 U.S.C. § 3142(g)(3)(B) merely speaks of the need for the district court to consider Patel's status "at the time of the current offense or arrest," not at the time of conviction. Patel may

raise his defense at trial,[4] but that does not change the fact that a grand jury has found probable cause that he committed the offense in this case, and the offense occurred pending completion of his sentence. His conduct falls squarely within the statutory provision and weighs against release.

Moreover, Patel is a Canadian citizen with clear, proven access to large amounts of cryptocurrency. Those funds could easily be used to facilitate his flight. Indeed, PSA warned the court that it could not monitor Patel via GPS in Canada and that there "would be a concern of risk of flight" should Patel be released there (App. Ex. A at 20). Patel seems to concede (at 14) that his citizenship and residency weigh against release, which is not surprising considering the vast number of courts that have concluded the same. *See, e.g.*, *United States v. Brennerman*, 705 F. App'x 13, 14-15 (2d Cir. 2017) (serious risk of flight where a foreign-national defendant has few or no ties to the United States); *United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017) (same); *United States v. Frater*, 356 F. App'x 133, 135 (10th Cir. 2009) (same);

---

[4] As discussed further infra, that defense would be meritless in any event.

*United States v. Hussain*, 6 F. App'x 50, 51-52 (1st Cir. 2001) (same);

*United States v. Townsend*, 897 F.2d 989, 995-96 (9th Cir. 1990) (same).

Patel continues to suggest (at 21-22) that he could stay with a family friend in Long Island, and he notes that his brother stayed with that friend during the pendency of the prior case. But Patel is not his brother, and his transfer of large amount of funds while pending self-surrender—along with the deceptive way in which he interacted with Blockchain—suggest that no third party would be able to prevent Patel from marshaling significant funds and fleeing the jurisdiction without that third party's knowledge. Indeed, Patel does not provide any detail on the supervision that his friend would provide, nor how that friend could ensure that Patel remains compliant with his conditions of release. The district court did not clearly err in finding that Patel's "access to substantial cryptocurrency resources, as well as his ability and willingness to defy the Court, would make this condition insufficient to reasonably assure Patel's appearance" (App. Ex. C at 6).

Patel also disputes (at 12, 14-15) the district court's finding that he was a flight risk because he appeared in court for his prior case. He merely reiterates arguments that were considered and rejected by the

district court. The court anchored its flight finding in the multiple and varied evidence that all supported the conclusion that Patel has disobeyed and will disobey or seek to interfere with court orders (App. Ex. C at 4-6). But in any event, Patel's appearances in court did not prevent him from trying to hide roughly $24 million in the Blockchain account, thereby "attempt[ing] to evade the obligations of his sentence" (*id.* at 6). His attempt to evade the obligations of his sentence while on release indicates a willingness to disregard other court orders as well, including orders to attend court in the future. *See, e.g.*, *Brennerman*, 705 F. App'x at 14 (district court's finding that defendant posed risk of flight was "amply supported by the court's particular findings that [the defendant] lacked strong ties to the United States and had a history of deceit, both generally and particularly in his dealings with the court").

Relatedly, Patel misses the mark when he argues (at 13-14) that the district court did not explain why the "timing" of his transaction indicates that he is a "serious risk of flight." After the district court sentenced Patel to a term of incarceration, but before he had to submit to that incarceration, Patel transferred approximately $24 million to an account with a company based outside of the United States (ECF 11 at 1-

2, 4-5). As his self-surrender date neared, he became increasingly frantic to regain control of the funds (*id.* at 6-7). Patel credits himself (at 6) for turning himself in, but he does not state what he would have done had Blockchain not frozen the $24 million that he transferred. Plainly, that amount of money could facilitate his flight from the reach of the district court. The deception that he employed while opening the account only adds to the inference that he would have used the funds for a nefarious purpose (*id.* at 4-6), and the timing of the transaction supports an inference that he would have used the funds to evade the obligations of his sentence. The district court did not err, clearly or otherwise, in finding that Patel's history and characteristics weighed against release.

### 2.    The nature and circumstances of the offense favor detention.

The nature and circumstances of the offense also favor detention. As the district court found (App. Ex. C at 4), Patel took elaborate steps to conceal his role in the schemes, *see United States v. Otunyo,* No. 18-251, 2020 WL 2065041, at *4 (D.D.C. Apr. 28, 2020), and used highly technical means to avoid detection, *see United States v. Bikundi*, 47 F. Supp. 3d 131, 134 (D.D.C. 2014). Patel's claims (at 16) that "the Government does not allege that [he] concealed his ownership of the transferring account"

and that he "did not conceal his role in the transaction" fall flat. The government's proffer alleged that before he finally abandoned the pretense that he did not own the account, Patel opened the account in his father's name, registered it to an address in Belize that had previously been used to incorporate shell companies, and corresponded with Blockchain.com under the guise of an employee of one of his company's subsidiaries (ECF 11 at 4-6, 8). Plainly, Patel was trying to hide the fact that he was the actual account owner.

His claim (at 16) that he did not use highly technical means is equally unavailing. The government alleged that Patel consolidated approximately 49 unspent deposits of Bitcoin into a private Bitcoin wallet (ECF 11 at 9). Those deposits, in turn, originated from a complex set of transactions over several years that included cryptocurrency wallet services providers, swaps of Bitcoin for other cryptocurrency assets over platforms often used by criminal organizations, an unusually high number of deposits into a type of wallet that is often used for criminal activity, and deposits that originated from dark web criminal enterprises (*id.* at 10-14). The activity here thus reaches far beyond simply one transfer of Bitcoin, *see* Appellant Memorandum (Mem.) at 16-17, and

19

highlights Patel's "ability and willingness to marshal substantial financial resources for criminal purposes" (App. Ex. C at 4).

Patel argues (at 17-18) that the district court did not tie the nature and circumstances of the crime to any flight, but he ignores the fact that the district court's reference to his ready ability to use financial resources for "criminal purposes" does not just contemplate future substantive crimes that Patel could complete upon release (App. Ex. C at 4). It also contemplates Patel "marshal[ing]" his "substantial financial resources" for the "criminal purpose[]" of fleeing from justice in this case (*id.*). And in any event, the district court also tied the nature and circumstances of the offense to Patel's risk of flight when it noted that his "egregious" transfer of the Bitcoin "weighs in favor of a finding that the defendant may attempt to avoid appearing in court . . . because it took place while the defendant was awaiting, on his own motion, the self-surrender date for his prior, related criminal offense" (*id.*). The district court could permissibly consider that Patel's attempts to evade his forfeiture obligations—while thereby also taking advantage of the court's leniency in delaying his self-surrender date—was evidence that he would violate

other court orders in the future, including a court order to appear in court.

Finally, Patel is incorrect that the district court erred in its treatment of his potential exposure should he be convicted at trial. See Appellant Mem. at 17-18. Patel claims that this factor works in his favor because he was facing a higher Guidelines range in his prior case. *Id.* at 18. First, Patel ignores the significant amount of incarceration he would face under his current estimated Guidelines range in this case, which ranges from 135 to 188 months depending on how his criminal history is scored (ECF 11 at 18 n.6). That range by itself represents a hefty period of incarceration that courts have weighed in favor of finding a flight risk. *See, e.g.*, *Brennerman*, 705 F. App'x at 15 (affirming detention where foreign-national defendant faced a Guidelines range of 57 to 71 months in prison). Second, his exposure in his prior case came nowhere near to fruition and offers a poor basis for comparison. Patel received a plea deal under Fed. R. Crim. P. 11(c)(1)(C) that put his actual sentencing range at 20 to 52 months, and he ultimately received a sentence of 36 months (App. Ex. C at 6; Appellant Mem. at 6). But Patel cannot assume such leniency in this situation because he is now a felon who tried to launder

funds that should have been forfeited as part of his conviction for operating a money-laundering business. Third, Patel's situation differs now that he has served a term of incarceration as a result of his prior case. Prison is no longer an abstract concept to him, but a reality to which he may soon return, and he faces that prospect shortly after his release in his prior case. The temptation to flee is stronger under those circumstances. The district court thus did not clearly err in noting his relatively short sentence in his prior case compared to the substantial prison time he now faces. *See, e.g.*, *Hale-Cusanelli*, 3 F.4th at 455 (the "factfinder's choice between [two permissible views of evidence] cannot be clearly erroneous").

### 3.    The weight of the evidence favors detention.

The district court also correctly agreed with Judge Meriweather that the "strong" evidence in this case favors detention (App. Ex. C at 5; see App. Ex. A at 26). Even aside from the detailed proffer that the government put forward (ECF 11 at 2-14), the circumstantial evidence that Patel committed the offense was "persuasive" (App. Ex. C at 5). Patel transferred $24 billion in Bitcoin to an account operated by an overseas company, and he did so through a series of obfuscations that indicated

his desire to hide that activity from authorities (ECF 11 at 4-7). Moreover, he made the transfer while awaiting "self-surrender on a sentence that included a sweeping forfeiture order tied to his prior business, which itself involved cryptocurrency operations" (App. Ex. C at 5). *See, e.g.*, *Berkun*, 392 F. App'x at 903 (strength of the evidence favored detention even though the defendant challenged the inferences from that evidence because the defendant could not "easily dispute his fraudulent intent in light of his acknowledged past commission of securities fraud").

Patel no longer challenges the government's ability to trace the Bitcoin proceeds to Payza. See Appellant Mem. at 19. Instead, he challenges the government's ability to trace the proceeds to Payza's "U.S. operations." See *id*. But there is no legally significant distinction between Payza's U.S. and foreign operations. In Patel's prior case, Payza was charged as a single corporate entity doing business in the United States and abroad, and both Payza and Patel pleaded guilty to conspiracy to commit offenses against the United States by violating 18 U.S.C. § 1960 (illegal money transmitting business) and 18 U.S.C. § 1956(a)(2)(A) (illegal transfer of funds into and out of the United States with intent to carry out unlawful activity). See Docket for *United States v. MH Pillars*

23

*Ltd., et al.*, 18-cr-053 (RDM) ("*MH Pillars*"), ECF No. 81; *id.* at ECF No. 89 at 2, 4, 7; *MH Pillars* Minute Entry of July 16, 2020.

Thus, all of Payza was an illegal enterprise, and pursuant to 18 U.S.C. § 982(a)(1), all of Payza's assets were subject to forfeiture as property "involved in" a business operating in violation of 18 U.S.C. § 1960 and 18 U.S.C. § 1956. See *MH Pillars*, ECF No. 81 at 3 (defendants shall forfeit any property "involved in [the] offense, and any property traceable to such property"); *accord* 18 U.S.C. § 982(a)(1). As the government summarized to Judge Friedrich, "The whole business was a criminal business. The whole business was charged in this court. And the whole business, all the property involved in that business, was subject to forfeiture." (App. Ex. B at 22.) Here, "[b]ecause the evidence of guilt is strong, it provides [Patel] with an incentive to flee." *Berkun*, 392 F. App'x at 903.

## C.   The District Court Did Not Fail to Consider Available Release Conditions.

Finally, Patel is incorrect that the district court did not consider alternatives to incarceration. See Appellant Mem. at 20-22. As discussed *supra*, it considered his proposal to stay with a family friend in Long Island but permissibly found it wanting considering Patel's ready access

24

to cryptocurrency resources and the lack of detail he had put forth regarding that plan (App. Ex. C at 5-6). Patel continues to reference his compliance in his prior case, but, again, his situation has substantially changed, and his conduct while awaiting self-surrender is an intervening development that has revealed his untrustworthiness. Nor does Patel explain how an appearance bond would meaningfully change the situation. Given that Patel attempted to surreptitiously transfer approximately $24 million in Bitcoin without the government or the court noticing, it is difficult to imagine an appearance bond that would deter him from fleeing. Indeed, Patel has access to additional cryptocurrency and bank accounts in multiple countries, all of which gives him access to millions of dollars (App. Ex. A at 11). Given those resources and Patel's past conduct, the district court did not clearly err in finding that "no condition" of release would reasonably assure Patel's appearance (App. Ex. C at 6).

## Conclusion

WHEREFORE, the government respectfully submits that the order of the District Court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
CHRISTOPHER B. BROWN
ARVIND K. LAL
Assistant United States Attorneys

_____/s/_____
KEVIN BIRNEY
D.C. Bar #1029424
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Kevin.Birney@usdoj.gov
(202) 252-6829

26

## CERTIFICATE OF COMPLIANCE WITH RULE 27(D)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this memorandum of law and fact contains 5,130 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
KEVIN BIRNEY
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, A. Jeff Ifrah, Esq., jeff@ifrahlaw.com, on this 3rd day of July, 2023.

/s/
KEVIN BIRNEY
Assistant United States Attorney

# GOVERNMENT EXHIBIT A

```
1              UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                    FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA      Criminal No.  23-cr-00166

4          v.                      Washington, D.C.

5    FIROZ PATEL,                  May 17, 2023

6              Defendant.          12:30 p.m.

7    -------------------------/

8              TRANSCRIPT OF INITIAL APPEARANCE
          BEFORE THE HONORABLE MOXILA A. UPADHYAYA
9              UNITED STATES MAGISTRATE JUDGE

10   APPEARANCES:

11   For the Government:    United States Attorney's Office
                           By: CHRISTOPHER BROWN, ESQUIRE
12                             ARVIND LAL, ESQUIRE
                           555 Fourth Street, NW
13                         Washington, D.C.  20530

14

15   For the Defendant:    Ifrah Law PLLC
                           By: JACOB GRUBMAN, ESQUIRE
16                             JEFFREY IFRAH, ESQUIRE
                           1717 Pennsylvania Avenue, NW
17                         Suite 650
                           Washington, D.C. 20006
18

19
     Court Reporter        Lisa K. Bankins RMR FCRR RDR
20                         United States District Court
                           District of Columbia
21                         333 Constitution Avenue, NW
                           Washington, D.C. 20001
22

23

24   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
25
```

1              P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Good afternoon, Your

3    Honor.  This is sealed Criminal Case Number 23-166, the

4    United States of America versus Firoz Patel.  The

5    defendant is present in the courtroom.  This matter is set

6    for a return on arrest warrant, initial appearance and

7    arraignment.  Parties, please introduce yourselves for the

8    record, starting with the government.

9          MR. BROWN:  Good afternoon, Your Honor.  AUSA

10   Christopher Brown for the government.  For the record with

11   me in the courtroom is a staff member from the U.S.

12   Attorney's Office, Angela DeFalko and my co-counsel,

13   Arvind Lal, also from the U.S. Attorney's Office is

14   appearing by phone.

15         THE COURT:  Good afternoon, Mr. Brown.

16         MR. GRUBMAN:  Good afternoon, Your Honor.  This

17   is Jacob Grubman.  I'm from the law firm, Ifrah Law.  I

18   represent the defendant.  For the record, Jeff Ifrah is

19   also participating via Zoom.

20         THE COURT:  Okay.  Good afternoon, Mr. Grubman,

21   and good afternoon, Mr. Patel.

22         THE DEFENDANT:  Good afternoon, Your Honor.

23         THE COURT:  Okay.  Is this matter staying

24   sealed, Mr. Brown?

25         MR. BROWN:  No, Your Honor.  The government

1  moves to unseal the case at this time.

2          THE COURT:  Okay.  Very well.  I will grant that

3  motion.

4          Okay.  I'd just like to remind everyone

5  listening or who is a party to this hybrid proceeding that

6  recording or a recording of these proceedings is strictly

7  prohibited and violation of this order may result in

8  sanctions as the court deems is necessary.

9          Let me go ahead, please, and swear in Mr. Patel.

10          THE COURTROOM DEPUTY:  Mr. Patel, please stand

11  and raise your right hand?

12          (Defendant sworn.)

13          THE COURT:  Okay.  Mr. Patel, this -- I'd just

14  first like to give you a little bit of a road map of what

15  today's hearing is going to be.  But before I do that, I'd

16  just like to advise you that it is your right to have a

17  fully in-person hearing.  We're doing a hybrid proceeding

18  today actually because I'm under the weather and I didn't

19  want to come in and get other people sick.  So that said,

20  you are entitled to have me be there in person and have

21  your counsel be there in person.  But I'd just like you to

22  confirm that you waive that right and you are consenting

23  to us proceeding in this fashion today?

24          THE DEFENDANT:  I will waive.  That's fine.

25          THE COURT:  Okay.  Thank you.  Okay.  Today's

1   hearing is basically going to be -- it's called an initial

2   appearance and an arraignment, sir.  What we're going to

3   do today is I'm going to formally advise you of the

4   charges against you which is my duty and advise you of

5   your rights.  I'm going to make sure that you have a

6   lawyer if you want one and I'm going to remind government

7   counsel of its obligations.  I'll give you a chance to

8   enter a plea if we're going to do an arraignment today, a

9   formal plea as to the charges against you and then we'll

10  talk about next steps in the case.  Okay?

11          If you have questions at any time, just let me

12  know, sir.  I'm happy to halt the proceedings so that you

13  can speak privately with your counsel.

14          THE DEFENDANT:  Okay.

15          THE COURT:  And just to make sure that you're

16  comfortable, sir, marshals are you okay with Mr. Patel

17  having his restraints taken off?

18          THE MARSHAL:  (Inaudible.  The marshal did not

19  speak into the microphone.)

20          THE COURT:  Well, I'll let you tell me what your

21  comfortable with, sir.  So typically, we don't have

22  restraints on, but --

23          THE MARSHAL:  I can remove them.

24          THE COURT:  Okay.  Thank you.

25          THE DEFENDANT:  Your Honor, it's been removed

1  now.

2          THE COURT:  Okay.  Great.  Mr. Patel, could you

3  please state your full name for the record?

4          THE DEFENDANT:  It is Firoz Patel.

5          THE COURT:  And how old are you, sir?

6          THE DEFENDANT:  I'm 48 years of age.

7          THE COURT:  How far did you get in school?

8          THE DEFENDANT:  An Associate's Degree.

9          THE COURT:  And have you had any alcohol, drugs,

10  medication of any kind in the last 24 hours or substance

11  of any kind in the last 24 hours that would make it

12  difficult for you to understand today's proceedings?

13          THE DEFENDANT:  I am under no influence of any

14  sort.

15          THE COURT:  Okay.  All right.  As I mentioned,

16  it is my obligation to advise you of your charges.  I'm

17  going to do that now, sir.

18          You have been charged in a two-count indictment.

19  Count One is laundering of monetary instruments in

20  violation of 18 United States Code, 1956(a)(1)(b)(I).

21  This carries with it a term of imprisonment of not more

22  than 20 years, a fine of not more than $500,000 or twice

23  the value of the property involved in the transaction,

24  whichever is greater or both, imprisonment and a fine.

25  The court may impose a term of supervised release of not

1    more than three years.

2          Count Two is engaging in monetary transactions

3    and property derived from specific unlawful activity.

4    This is in violation of 18 United States Code, 1957(a).

5    This carries with it a term of imprisonment of not more

6    than ten years, a fine of not more than $250,000 or twice

7    the value of the property involved in the transaction or

8    both, imprisonment and a fine.  The court may impose a

9    term of supervised release of not more than three years.

10          This indictment also includes a criminal

11   forfeiture allegation.  Pursuant to 18 United States Code,

12   982(a)(1) and 21 USC, 853(p), the government will seek a

13   forfeiture money judgment equal to the value of any

14   property, real or personal, involved in Counts One and/or

15   Two and any property traceable to that property.

16          As I mentioned, sir, you do have certain rights

17   in connection with this case.  I'm going to read those to

18   you now.  You have the right to remain silent.  That means

19   you are not required to give any statement to law

20   enforcement officer or make any statement to law

21   enforcement officers while these charges are pending

22   against you.  If you've already made a statement to law

23   enforcement or to anyone in the prosecution about the

24   charges -- offenses for which you've been charged, you

25   don't need to say anything more to them.  Anything you do

1  say can be held against you in this case or in a future

2  case.  Do you understand that, sir?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  You are also entitled to the

5  assistance of an attorney to represent you in this case.

6  You have two options in this regard.  You can either hire

7  your own lawyer, sir, or if you cannot afford to hire your

8  own lawyer, you can ask me to appoint an attorney for you.

9   Do you understand that, sir?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Okay.  Do you have a preference as

12  to whether you would like to hire your own lawyer or

13  whether you would like the court to appoint one for you?

14          THE DEFENDANT:  I've already retained counsel.

15          THE COURT:  Okay.  All right.  Mr. Grubman, will

16  you be representing Mr. Patel in this matter?

17          MR. GRUBMAN:  At this stage, Your Honor, yes.

18          THE COURT:  Okay.  Very well.  Okay.  I'd just

19  like to remind government counsel that as required by

20  Federal Rule of Criminal Procedure 5(f), the United States

21  is ordered to produce all exculpatory evidence to

22  Mr. Patel and his counsel pursuant to Brady versus

23  Maryland and its progeny.  Not doing so in a timely manner

24  may result in sanctions against the government, including

25  exclusion of evidence, adverse jury instructions,

1  dismissal of charges and contempt proceedings against

2  government counsel.  Do you understand this, Mr. Brown?

3           MR. BROWN:  Yes, Your Honor.  We understand.

4           THE COURT:  Okay.  Great.  Okay.  My

5  understanding is that Mr. Patel would like to have his

6  arraignment today.  Is that right, Mr. Brown?

7           MR. BROWN:  Yes, Your Honor.

8           THE COURT:  And Mr. Grubman, have you had a

9  chance to give Mr. Patel a copy of the indictment and have

10  you had a chance to go over it with him?

11           MR. GRUBMAN:  Your Honor, we have received a

12  copy of the indictment, but we have not had a chance to

13  discuss it in great deal with the defendant.

14           THE COURT:  Okay.  Is he --

15           MR. GRUBMAN:  Sorry.  We have had a chance to

16  discuss the nature of the charges and we believe Mr. Patel

17  is aware of the charges that he's facing.

18           THE COURT:  Okay.  So is he ready to enter a

19  plea?

20           MR. GRUBMAN:  Yes, Your Honor.

21           THE COURT:  Okay.  Does he waive formal reading

22  of the indictment?

23           MR. GRUBMAN:  Yes, Your Honor.

24           THE COURT:  Okay.  Mr. Patel, the arraignment is

25  a short proceeding, but it's an important proceeding.

1  This is the opportunity you have to tell me how you

2  formally plead to these charges.  And how do you plea with

3  respect to the counts in the indictment?

4          THE DEFENDANT:  Okay.  I understand.  So you are

5  asking me a question?  Okay.  Sorry, Your Honor.

6          THE COURT:  Yes.  That's okay.  That's okay.

7  Just take a moment and just make sure you understand

8  what's going on.  I'm giving you a chance to tell me

9  formally how you plead with respect to the counts in the

10  indictment?

11          THE DEFENDANT:  Not guilty, Your Honor.

12          THE COURT:  Okay.  Very well.  I will enter a

13  plea of not guilty as to all counts in the indictment.

14          Okay.  Mr. Brown, what is the government's

15  position with respect to detention or release?

16          MR. BROWN:  Your Honor, with respect to

17  detention, the government is seeking pretrial detention

18  pursuant to 18 USC, 3142(f)(2)(a) on the ground that the

19  defendant poses a serious risk of flight.  We are prepared

20  to proffer some evidence today, but we're going to ask for

21  a three-day continuance of the detention hearing and we'd

22  be happy to submit formal detention memoranda.

23          The basis for detention here is that, number

24  one, the defendant is -- he is a foreign citizen with no

25  real ties to the United States.  And the nature and

1   circumstances of this offense involve -- they relate to a

2   prior prosecution in which the defendant was prosecuted

3   and ultimately pled guilty to charges in this court in the

4   District of Columbia.  He was sentenced and he was allowed

5   to self-surrender.

6          The charges in this case arise from a

7   transaction that occurred shortly before the defendant

8   self-surrendered when according to the indictment, he

9   transferred 450 bit coin worth approximately $24 million

10  in property related -- property that was subject to

11  forfeiture in the previous case.  And it's our allegation

12  that he transferred that property to an account under his

13  father's name that was really just his account and he did

14  so in order to move that property, which was subject to

15  forfeiture beyond the kin of this court.  And so we

16  believe that the nature and circumstances of that offense

17  casts serious doubt about his ability to comply with

18  conditions of release.

19         In his favor, I do want to make clear that in

20  the previous case, he was out on personal recognizance and

21  he was allowed to self-surrender and he did

22  self-surrender.  But given the conduct in this case, we

23  think that no condition or combination of conditions would

24  assure his appearance at trial.

25         THE COURT:  Okay.  Have you spoken to

1    Mr. Grubman about a time and date for a detention hearing?

2            MR. GRUBMAN:  We have not.

3            THE COURT:  Okay.  Well, a three-day hold would

4    take us to Monday.  Is everyone available Monday

5    afternoon?

6            MR. BROWN:  Yes, Your Honor.  The government is

7    available.

8            MR. GRUBMAN:  Yes, Your Honor.

9            THE COURT:  Okay.  Let's go ahead and set it for

10   Monday afternoon, Ms. Butler.  At what time?

11           THE COURTROOM DEPUTY:  Your Honor, we could do

12   2 p.m.

13           THE COURT:  Okay.  Very well.

14           THE DEFENDANT:  Your Honor, may I ask a

15   question?

16           THE COURT:  Yes.

17           THE DEFENDANT:  Is there no way we can just do

18   that right now in this session?

19           THE COURT:  So the government, sir, is

20   requesting a three-day time period and statutorily, sir, I

21   don't have the -- I don't have the power to deny that

22   request.  They are entitled to that time to have a

23   detention hearing.  And that's typically how these matters

24   go.  That time when it's requested by the government, I'm

25   obligated under statute to grant it and the government

1  will file a memorandum in aid of its request.  And they're

2  going to have to prove that -- what they're saying right

3  now, they're going to actually have to prove it.  The

4  court doesn't just go based on, you know, arguments.  The

5  government does have a burden and then you will have the

6  right to respond to it through your counsel as well.

7         THE DEFENDANT:  I see.  All right.

8         MR. GRUBMAN:  Your Honor, I have a brief

9  question.  The defense has a motion for pretrial release

10 prepared.  We're asking to submit that sooner or wait for

11 the government's filings in relation to the detention

12 hearing on Monday --

13        THE COURT:  Okay.  Mr. Brown, I'm going to order

14 that you get your memorandum in by Friday at noon so that

15 I have a chance to -- I'm not sure whether I'll be

16 handling the detention hearing, but I'd like Mr. Grubman

17 to respond.  What I'd like you to do, sir, is to respond

18 to that memorandum with a cross motion.  And I'll -- and

19 just consolidate that briefing.  So any arguments you have

20 in favor of release, please make them in that filing.

21        MR. GRUBMAN:  Thank you, Your Honor.

22        THE COURT:  Okay.

23        MR. BROWN:  Your Honor, the government has a

24 couple of housekeeping issues.  If now would be an

25 appropriate time?

1          THE COURT:  Yes.

2          MR. BROWN:  Number one, because the defendant is

3    a citizen of Canada, Canada is not a mandatory

4    notification country, but I'm prepared to read into the

5    record -- I'm not sure if this happened at the defendant's

6    initial appearance in Connecticut.  I'm prepared to read

7    into the record just a notice of his right to consular

8    notification.

9          THE COURT:  Very well.  Please do that.

10          MR. BROWN:  Okay.  Mr. Patel, as a non-U.S.

11    citizen who's being arrested or detained, you may request

12    that we notify your country's consular officers here in

13    the United States of your situation.  You may also

14    communicate with your consular officers.  The consular

15    officer may be able to help you obtain legal

16    representation and may contact your family and visit you

17    in detention among other things.  If you want us to notify

18    your consular officers, you can request this notification

19    now or at any time in the future.

20          And, Your Honor, the second issue I wanted to

21    raise is just to put on the record a possible conflict

22    issue that we had a chance to discuss with Mr. Grubman

23    over the phone earlier.  In the prior prosecution of

24    Mr. Patel, one of his co-defendants was also his brother

25    named Ferhan Patel.  The Ifrah law firm represented Ferhan

1  Patel in that proceeding.  There is a possible though not

2  fully realized conflict here potentially between

3  Mr. Patel, the defendant, and his brother, Ferhan Patel.

4  I understand from Mr. Grubman that they have already

5  discussed this possible conflict with Ferhan Patel and

6  that they have a waiver of the conflict from Mr. Ferhan

7  Patel.  But I wanted to put that on the record.

8         THE COURT:  Okay.  Mr. Grubman, would you like

9  to respond?

10        MR. GRUBMAN:  Thank you, Your Honor.

11 Mr. Brown's summary of the matter is accurate.  He and I

12 along with Mr. Lal discussed the potential for a conflict

13 this morning.  And Mr. Lal introduced the possibility of a

14 conflict when we first discussed the matter some time ago.

15        At this stage, our firm feels comfortable that

16 we're able to provide competent representation that is not

17 subject to a conflict to Mr. Patel.  Like Mr. Brown

18 mentioned, we've discussed the possibility of a conflict

19 with Mr. Patel and both he and our former client, Ferhan

20 Patel, had agreed to waiver of any conflict.

21        In addition, we inquired with the government

22 about the specificity of any potential conflict which

23 seemed to have stemmed from additional possible charges in

24 this case and the government declined to provide any

25 additional specific information.

1          For those reasons, we feel comfortable

2    proceeding at the detention hearing stage.

3          THE COURT:  Okay.  Well, if you have a written

4    waiver, I'm going to need you to file it on the record,

5    sir.

6          MR. GRUBMAN:  Yes, Your Honor.

7          THE COURT:  Okay.  All right.  Well, the

8    court -- you know, I'll let you proceed for now, but I

9    would like to make sure, Mr. Grubman, that you have spoken

10   to government counsel.

11         And let me ask Mr. Brown, given what you've

12   heard, sir, do you have an objection to proceeding with

13   the detention hearing with Mr. Grubman representing

14   Mr. Patel?

15         MR. BROWN:  No, Your Honor.  At this stage, we

16   do not have an objection.

17         THE COURT:  All right.  Okay.  Well, please file

18   the waiver, Mr. Grubman, on the record so that we have a

19   copy of it.

20         MR. GRUBMAN:  Yes, Your Honor.  We will.

21         THE COURT:  Okay.  Is there anything further?

22         MR. BROWN:  Nothing further from the government,

23   Your Honor.

24         THE COURT:  Anything from defense?

25         MR. GRUBMAN:  Nothing further, Your Honor.

1          THE COURT:  Okay.  So, Mr. Patel, the next step

2    is going to be your detention hearing, which will be on

3    Monday at 2 p.m.  That will either be before me or one of

4    the other magistrate judges that are available.  As I

5    mentioned between now and then, you will have the

6    opportunity to through your counsel to submit any

7    arguments in favor of your release which the Court will

8    consider.  Okay?

9          THE DEFENDANT:  Okay.

10          THE COURT:  If there's nothing else, I will

11    excuse all the parties in the Patel matter.

12          MR. BROWN:  Thank you, Your Honor.

13          THE COURT:  You are welcome.

14          MR. GRUBMAN:  Thank you.

15          (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

1                    <u>CERTIFICATE OF REPORTER</u>

2

3              I, Lisa K. Bankins, an Official Court Reporter

4     for the United States District Court for the District of

5     Columbia, do hereby certify that I transcribed via audio,

6     by machine shorthand, in my official capacity, the

7     proceedings had and testimony adduced upon the initial

8     appearance in the case of the United States of America

9     versus Firoz Patel, Criminal Number 23-cr-00166, in said

10    court on the 17th day of May, 2023.

11

12             I further certify that the foregoing 16 pages

13    constitute the official transcript of said proceedings, as

14    taken from my machine shorthand notes, together with the

15    backup tape of said proceedings to the best of my ability.

16

17             In witness whereof, I have hereto subscribed my

18    name, this 20th day of June, 2023.

19

20

21                              *Lisa K. Bankins*

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

MR. BROWN: [12] 2/9 2/25 8/3 8/7
9/16 11/6 12/23 13/2 13/10 15/15
15/22 16/12
MR. GRUBMAN: [15] 2/16 7/17 8/11
8/15 8/20 8/23 11/2 11/8 12/8 12/21
14/10 15/6 15/20 15/25 16/14
THE COURT: [45]
THE COURTROOM DEPUTY: [3] 2/2
3/10 11/11
THE DEFENDANT: [17] 2/22 3/24
4/14 4/25 5/4 5/6 5/8 5/13 7/3 7/10
7/14 9/4 9/11 11/14 11/17 12/7 16/9
THE MARSHAL: [2] 4/18 4/23

**$**

$24 [1] 10/9
$250,000 [1] 6/6
$500,000 [1] 5/22

**0**

00166 [2] 1/3 17/9

**1**

12:30 [1] 1/6
16 [1] 17/12
166 [1] 2/3
17 [1] 1/5
1717 [1] 1/16
17th [1] 17/10
18 [4] 5/20 6/4 6/11 9/18
1956 [1] 5/20
1957 [1] 6/4

**2**

20 [1] 5/22
20001 [1] 1/21
20006 [1] 1/17
2023 [3] 1/5 17/10 17/18
20530 [1] 1/13
20th [1] 17/18
21 [1] 6/12
23-166 [1] 2/3
23-cr-00166 [2] 1/3 17/9
24 [2] 5/10 5/11

**3**

3142 [1] 9/18
333 [1] 1/21

**4**

450 [1] 10/9
48 [1] 5/6

**5**

555 [1] 1/12

**6**

650 [1] 1/17

**8**

853 [1] 6/12

**9**

982 [1] 6/12

**A**

ability [2] 10/17 17/15
able [2] 13/15 14/16
about [5] 4/10 6/23 10/17 11/1 14/22

according [1] 10/8
account [2] 10/12 10/13
accurately [1] 16/11
activity [1] 6/3
actually [2] 3/18 12/3
addition [1] 14/21
additional [2] 14/23 14/25
adduced [1] 17/7
adverse [1] 7/25
advise [4] 3/16 4/3 4/4 5/16
afford [1] 7/7
afternoon [9] 2/2 2/9 2/15 2/16 2/20
2/21 2/22 11/5 11/10
age [1] 5/6
ago [1] 14/14
agreed [1] 14/20
ahead [2] 3/9 11/9
aid [1] 12/1
alcohol [1] 5/9
all [8] 5/15 7/15 7/21 9/13 12/7 15/7
15/17 16/11
allegation [2] 6/11 10/11
allowed [2] 10/4 10/21
along [1] 14/12
already [3] 6/22 7/14 14/4
also [6] 2/13 2/19 6/10 7/4 13/13 13/24
am [1] 5/13
AMERICA [3] 1/3 2/4 17/8
among [1] 13/17
Angela [1] 2/12
any [15] 4/11 5/9 5/10 5/11 5/13 6/13
6/15 6/19 6/20 12/19 13/19 14/20
14/22 14/24 16/6
anyone [1] 6/23
anything [4] 6/25 6/25 15/21 15/24
appearance [6] 1/8 2/6 4/2 10/24 13/6
17/8
APPEARANCES [1] 1/10
appearing [1] 2/14
appoint [2] 7/8 7/13
appropriate [1] 12/25
approximately [1] 10/9
are [12] 3/20 3/22 4/16 5/5 6/19 6/21
7/4 9/4 9/19 11/22 14/6 14/13
arguments [3] 12/4 12/19 16/7
arise [1] 10/6
arraignment [5] 2/7 4/2 4/8 8/6 8/24
arrest [1] 2/6
arrested [1] 13/11
ARVIND [2] 1/12 2/13
as [11] 3/8 4/9 5/15 6/16 7/11 7/19
9/13 12/6 13/10 16/4 17/13
ask [4] 7/8 9/20 11/14 15/11
asking [2] 9/5 12/10
assistance [1] 7/5
Associate's [1] 5/8
assure [1] 10/24
attorney [2] 7/5 7/8
Attorney's [3] 1/11 2/12 2/13
audio [1] 17/5
AUSA [2] 1/11 2/11
available [3] 11/4 11/7 16/4
Avenue [2] 1/16 1/21
aware [1] 8/17

**B**

backup [1] 17/15
Bankins [4] 1/19 17/3 17/21 17/22
BANKRUPTCY [1] 1/1

based [1] 12/4
basically [1] 4/1
basis [2] 9/23
be [13] 3/15 3/20 3/24 4/1 7/1 7/16
9/22 12/15 12/24 13/15 16/2 16/2 16/3
because [2] 3/18 13/2
been [3] 4/25 5/18 6/24
before [4] 1/8 3/15 10/7 16/3
being [1] 13/11
believe [2] 8/16 10/16
best [1] 17/15
between [2] 14/2 16/5
beyond [1] 10/15
bit [2] 3/14 10/9
both [3] 5/24 6/8 14/19
Brady [1] 7/22
brief [1] 12/8
briefing [1] 12/19
brother [2] 13/24 14/3
BROWN [10] 1/11 2/10 2/15 2/24 8/2
8/6 9/14 12/13 14/17 15/11
Brown's [1] 14/11
burden [1] 12/5
Butler [1] 11/10

**C**

called [1] 4/1
can [7] 4/13 4/23 7/1 7/6 7/8 11/17
13/18
Canada [2] 13/3 13/3
cannot [1] 7/7
capacity [1] 17/6
carries [2] 5/21 6/5
case [13] 2/3 3/1 4/10 6/17 7/1 7/2 7/5
10/6 10/11 10/20 10/22 14/24 17/8
casts [1] 10/17
certain [1] 6/16
CERTIFICATE [1] 16/16
certify [2] 17/5 17/12
chance [8] 4/7 8/9 8/10 8/12 8/15 9/8
12/15 13/22
charged [2] 5/18 6/24
charges [12] 4/4 4/9 5/16 6/21 6/24 8/1
8/16 8/17 9/2 10/3 10/6 14/23
CHRISTOPHER [2] 1/11 2/10
circumstances [2] 10/1 10/16
citizen [3] 9/24 13/3 13/11
clear [1] 10/19
client [1] 14/19
co [2] 2/12 13/24
co-counsel [1] 2/12
co-defendants [1] 13/24
Code [3] 5/20 6/4 6/11
coin [1] 10/9
COLUMBIA [4] 1/1 1/20 10/4 17/5
combination [1] 10/23
come [1] 3/19
comfortable [4] 4/16 4/21 14/15 15/1
communicate [1] 13/14
competent [1] 14/16
comply [1] 10/17
concluded [1] 16/15
condition [1] 10/23
conditions [2] 10/18 10/23
conduct [1] 10/22
confirm [1] 3/22
conflict [10] 13/21 14/2 14/5 14/6 14/12
14/14 14/17 14/18 14/20 14/22
Connecticut [1] 13/6
connection [1] 6/17

## C

consenting [1] 3/23
consider [1] 16/8
consolidate [1] 12/19
constitute [1] 17/13
Constitution [1] 1/21
consular [5] 13/7 13/12 13/14 13/14 13/18
contact [1] 13/16
contempt [1] 8/1
continuance [1] 9/21
copy [3] 8/9 8/12 15/19
could [2] 5/2 11/11
counsel [11] 2/12 3/21 4/7 4/13 7/14 7/19 7/22 8/2 12/6 15/10 16/6
count [3] 5/18 5/19 6/2
country [1] 13/4
country's [1] 13/12
counts [4] 6/14 9/3 9/9 9/13
couple [1] 12/24
court [15] 1/19 1/20 3/8 5/25 6/8 7/13 10/3 10/15 12/4 15/8 16/7 17/3 17/4 17/10 17/22
courtroom [2] 2/5 2/11
COURTS [1] 1/1
cr [2] 1/3 17/9
criminal [5] 1/3 2/3 6/10 7/20 17/9
cross [1] 12/18

## D

D.C [4] 1/4 1/13 1/17 1/21
date [1] 11/1
day [5] 9/21 11/3 11/20 17/10 17/18
deal [1] 8/13
declined [1] 14/24
deems [1] 3/8
DeFalko [1] 2/12
defendant [12] 1/6 1/15 2/5 2/18 3/12 8/13 9/19 9/24 10/2 10/7 13/2 14/3
defendant's [1] 13/5
defendants [1] 13/24
defense [2] 12/9 15/24
Degree [1] 5/9
deny [1] 11/21
derived [1] 6/3
detained [1] 13/11
detention [14] 9/15 9/17 9/17 9/21 9/22 9/23 11/1 11/23 12/11 12/16 13/17 15/2 15/13 16/2
did [4] 4/18 5/7 10/13 10/21
didn't [1] 3/18
difficult [1] 5/12
discuss [3] 8/13 8/16 13/22
discussed [4] 14/5 14/12 14/14 14/18
dismissal [1] 8/1
DISTRICT [7] 1/1 1/1 1/20 1/20 10/4 17/4 17/4
do [21]
does [2] 8/21 12/5
doesn't [1] 12/4
doing [2] 3/17 7/23
don't [4] 4/21 6/25 11/21 11/21
doubt [1] 10/17
drugs [1] 5/9
duty [1] 4/4

## E

earlier [1] 13/23
either [2] 7/6 16/3
else [1] 16/10

## enforcement [3] 6/20 6/21 6/23

engaging [1] 6/2
enter [3] 2/18 4/5 9/12
entitled [3] 3/20 7/4 11/22
equal [1] 6/13
ESQUIRE [4] 1/11 1/12 1/15 1/16
everyone [2] 3/4 11/4
evidence [3] 7/21 7/25 9/20
exclusion [1] 7/25
exculpatory [1] 7/21
excuse [1] 16/11

## F

facing [1] 8/17
family [1] 13/16
far [1] 5/7
fashion [1] 3/23
father's [1] 10/13
favor [3] 10/14 12/20 16/7
FCRR [1] 1/19
Federal [1] 7/20
feel [1] 15/1
feels [1] 14/15
Ferhan [6] 13/25 13/25 14/3 14/5 14/6 14/19
file [3] 12/1 15/4 15/17
filing [1] 12/20
filings [1] 12/11
fine [5] 3/24 5/22 5/24 6/6 6/8
firm [3] 2/17 13/25 14/15
FIROZ [4] 1/5 2/4 5/4 17/9
first [2] 3/14 14/14
flight [1] 9/19
foregoing [1] 17/12
foreign [1] 9/24
forfeiture [4] 6/11 6/13 10/11 10/15
formal [3] 4/9 8/21 9/22
formally [3] 4/3 9/2 9/9
former [1] 14/19
Fourth [1] 1/12
Friday [1] 12/14
full [1] 5/3
fully [2] 3/17 14/2
further [4] 15/21 15/22 15/25 17/12
future [2] 7/1 13/19

## G

get [3] 3/19 5/7 12/14
give [4] 3/14 4/7 6/19 8/9
given [2] 10/22 15/11
giving [1] 9/8
go [5] 3/9 8/10 11/9 11/24 12/4
going [16] 3/15 4/1 4/2 4/3 4/5 4/6 4/8 5/17 6/17 9/8 9/20 12/2 12/3 12/13 15/4 16/2
good [7] 2/2 2/9 2/15 2/16 2/20 2/21 2/22
government [20]
government's [2] 9/14 12/11
grant [2] 3/2 11/25
great [3] 5/2 8/4 8/13
greater [1] 5/24
ground [1] 9/18
GRUBMAN [11] 1/15 2/17 2/20 7/15 8/8 11/1 12/16 13/22 14/4 14/8 15/9 15/13 15/18
guilty [3] 9/11 9/13 10/3

## H

had [8] 5/9 8/8 8/10 8/12 8/15 13/22

## 14/20 17/7

halt [1] 4/12
handing [1] 8/11
handling [1] 12/16
happened [1] 13/5
happy [2] 4/12 9/22
has [2] 12/9 12/23
have [41]
having [1] 4/17
he [14] 8/14 8/18 8/21 9/24 10/4 10/4 10/8 10/12 10/13 10/20 10/21 10/21 14/11 14/19
he's [1] 8/17
heard [1] 15/12
hearing [11] 3/15 3/17 4/1 9/21 11/1 11/23 12/12 12/16 15/2 15/13 16/2
held [1] 7/1
help [1] 13/15
here [3] 9/23 13/12 14/2
hereby [1] 17/5
hereto [1] 17/17
him [1] 8/10
hire [3] 7/6 7/7 7/12
his [12] 4/17 7/22 8/5 10/12 10/13 10/17 10/19 10/24 13/7 13/24 13/24 14/3
hold [1] 11/3
Honor [30]
HONORABLE [1] 1/8
hours [2] 5/10 5/11
housekeeping [1] 12/24
how [6] 5/5 5/7 9/1 9/2 9/9 11/23
hybrid [2] 3/5 3/17

## I

I'd [7] 3/4 3/13 3/15 3/21 7/18 12/16 12/17
I'll [5] 4/7 4/20 12/15 12/18 15/8
I'm [17] 2/17 3/18 4/3 4/5 4/6 4/12 5/6 5/16 6/17 9/8 11/24 12/13 12/15 13/4 13/5 13/6 15/4
I've [1] 7/14
Ifrah [5] 1/15 1/16 2/17 2/18 13/25
important [1] 8/25
impose [2] 5/25 6/8
imprisonment [4] 5/21 5/24 6/5 6/8
Inaudible [1] 4/18
includes [1] 6/10
including [1] 7/24
indictment [9] 5/18 6/10 8/9 8/12 8/22 9/3 9/10 9/13 10/8
influence [1] 5/13
information [1] 14/25
initial [5] 1/8 2/6 4/1 13/6 17/7
inquired [1] 14/21
instructions [1] 7/25
instruments [1] 5/19
introduce [1] 2/7
introduced [1] 14/13
involve [1] 10/1
involved [3] 5/23 6/7 6/14
is [48]
issue [2] 13/20 13/22
issues [1] 12/24
it [14] 3/16 5/4 5/11 5/16 5/21 6/5 8/10 8/13 11/9 11/25 12/3 12/6 15/4 15/19
it's [5] 4/1 4/25 8/25 10/11 11/24
its [3] 4/7 7/23 12/1

**J**

Jeff [1]  2/18
JEFFREY [1]  1/16
JUDGE [1]  1/9
judges [1]  16/4
judgment [1]  6/13
June [1]  17/18
jury [1]  7/25
just [15]  3/4 3/13 3/16 3/21 4/11 4/15
7/18 9/7 9/7 10/13 11/17 12/4 12/19
13/7 13/21

**K**

kin [1]  10/15
kind [2]  5/10 5/11
know [3]  4/12 12/4 15/8

**L**

LAL [4]  1/12 2/13 14/12 14/13
last [2]  5/10 5/11
laundering [1]  5/19
law [7]  1/15 2/17 2/17 6/19 6/20 6/22
13/25
lawyer [4]  4/6 7/7 7/8 7/12
legal [1]  13/15
let [5]  3/9 4/11 4/20 15/8 15/11
Let's [1]  11/9
like [13]  3/4 3/14 3/16 3/21 7/12 7/13
7/19 8/5 12/16 12/17 14/8 14/17 15/9
Lisa [4]  1/19 17/3 17/21 17/22
listening [1]  3/5
little [1]  3/14

**M**

machine [2]  17/6 17/14
made [1]  6/22
magistrate [2]  1/9 16/4
make [8]  4/5 4/15 5/11 6/20 9/7 10/19
12/20 15/9
mandatory [1]  13/3
manner [1]  7/23
map [1]  3/14
marshal [1]  4/18
marshals [1]  4/16
Maryland [1]  7/23
matter [6]  2/5 2/23 7/16 14/11 14/14
16/11
matters [1]  11/23
may [11]  1/5 3/7 5/25 6/8 7/24 11/14
13/11 13/13 13/15 13/16 17/10
me [11]  2/11 3/9 3/20 4/11 4/20 7/8 9/1
9/5 9/8 15/11 16/3
means [1]  6/18
mechanical [1]  1/24
medication [1]  5/10
member [1]  2/11
memoranda [1]  9/22
memorandum [3]  12/1 12/14 12/18
mentioned [4]  5/15 6/16 14/18 16/5
microphone [1]  4/19
million [1]  10/9
moment [1]  9/7
Monday [5]  11/4 11/4 11/10 12/12 16/3
monetary [2]  5/19 6/2
money [1]  6/13
more [7]  5/21 5/22 6/1 6/5 6/6 6/9 6/25
morning [1]  14/13
motion [3]  3/3 12/9 12/18
move [1]  10/14
moves [1]  3/1

**MOXILA** [1]  1/8
Mr [4]  8/6 8/8 8/9 14/12
Mr. Brown [7]  2/15 2/24 8/2 9/14 12/13
14/17 15/11
Mr. Brown's [1]  14/11
Mr. Ferhan [1]  14/6
Mr. Grubman [10]  2/20 7/15 11/1 12/16
13/22 14/4 14/8 15/9 15/13 15/18
Mr. Lal [1]  14/13
Mr. Patel [18]
Ms. [1]  11/10
Ms. Butler [1]  11/10
my [8]  2/12 4/4 5/16 8/4 17/6 17/14
17/15 17/17

**N**

name [3]  5/3 10/13 17/18
named [1]  13/25
nature [3]  8/16 9/25 10/16
necessary [1]  3/8
need [2]  6/25 15/4
next [2]  4/10 16/1
no [7]  1/3 2/25 5/13 9/24 10/23 11/17
15/15
non [1]  13/10
non-U.S [1]  13/10
noon [1]  12/14
not [19]
notereading [1]  1/24
notes [1]  17/14
nothing [3]  15/22 15/25 16/10
notice [1]  13/7
notification [3]  13/4 13/8 13/18
notify [2]  13/12 13/17
now [9]  5/1 5/17 6/18 11/18 12/3 12/24
13/19 15/8 16/5
number [4]  2/3 9/23 13/2 17/9
NW [3]  1/12 1/16 1/21

**O**

objection [2]  15/12 15/16
obligated [1]  11/25
obligation [1]  5/16
obligations [1]  4/7
obtain [1]  13/15
occurred [1]  10/7
off [1]  4/17
offense [2]  10/1 10/16
offenses [1]  6/24
Office [3]  1/11 2/12 2/13
officer [2]  6/20 13/15
officers [4]  6/21 13/12 13/14 13/18
official [4]  17/3 17/6 17/13 17/22
okay [44]
old [1]  5/5
one [8]  4/6 5/19 6/14 7/13 9/24 13/2
13/24 16/3
opportunity [2]  9/1 16/6
options [1]  7/6
order [3]  3/7 10/14 12/13
ordered [1]  9/7
other [3]  3/19 13/17 16/4
our [3]  10/11 14/15 14/19
out [1]  10/20
over [2]  8/10 13/23
own [3]  7/7 7/8 7/12

**P**

p.m [3]  1/6 11/12 16/3

pages [1]  17/12
participating [1]  2/19
parties [4]  2/7 13/6
party [1]  3/5
PATEL [30]
pending [1]  6/21
Pennsylvania [1]  1/16
people [1]  3/19
period [1]  11/20
person [3]  3/17 3/20 3/21
personal [2]  6/14 10/20
phone [2]  2/14 13/23
plea [5]  4/8 4/9 8/19 9/2 9/13
plead [2]  9/2 9/9
please [7]  2/7 3/9 3/10 5/3 12/20 13/9
15/17
pled [1]  10/3
PLLC [1]  1/15
poses [1]  9/19
position [1]  9/15
possibility [2]  14/13 14/18
possible [4]  13/21 14/1 14/5 14/23
potential [2]  14/12 14/22
potentially [1]  14/2
power [1]  11/21
preference [1]  7/11
prepared [4]  9/19 12/10 13/4 13/6
present [1]  2/5
pretrial [2]  9/17 12/9
previous [2]  10/11 10/20
prior [2]  10/2 13/23
privately [1]  4/13
Procedure [1]  7/20
proceed [1]  15/8
proceeding [8]  3/5 3/17 3/23 8/25 8/25
14/1 15/2 15/12
proceedings [9]  1/24 3/6 4/12 5/12 8/1
16/15 17/7 17/13 17/15
produce [1]  7/21
produced [1]  1/24
proffer [1]  9/20
progeny [1]  7/23
prohibited [1]  3/7
property [10]  5/23 6/3 6/7 6/14 6/15
6/15 10/10 10/10 10/12 10/14
prosecuted [1]  10/2
prosecution [3]  6/23 10/2 13/23
prove [2]  12/2 12/3
provide [2]  14/16 14/24
pursuant [3]  6/11 7/22 9/18
put [2]  13/21 14/7

**Q**

question [3]  9/5 11/15 12/9
questions [1]  4/11

**R**

raise [2]  3/11 13/21
RDR [1]  1/19
read [3]  6/17 13/4 13/6
reading [1]  8/21
ready [1]  8/18
real [2]  6/14 9/25
realized [1]  14/2
really [1]  10/13
reasons [1]  15/1
received [1]  8/11
recognizance [1]  10/20
record [10]  2/8 2/10 2/18 5/3 13/5 13/7
13/21 14/7 15/4 15/18

**R**

recorded [1] 1/23
recording [2] 3/6 3/6
regard [1] 7/6
relate [1] 10/1
related [1] 10/10
relation [1] 12/11
release [7] 5/25 6/9 9/15 10/18 12/9
12/20 16/7
remain [1] 6/18
remind [3] 3/4 4/6 7/19
remove [1] 4/23
removed [1] 4/25
Reporter [4] 1/19 17/1 17/3 17/22
represent [2] 2/18 7/5
representation [2] 13/16 14/16
represented [1] 13/25
representing [2] 7/16 15/13
request [4] 11/22 12/1 13/11 13/18
requested [1] 11/24
requesting [1] 11/20
required [2] 6/19 7/19
respect [4] 9/3 9/9 9/15 9/16
respond [4] 12/6 12/17 12/17 14/9
restraints [2] 4/17 4/22
result [2] 3/7 7/24
retained [1] 7/14
return [1] 2/6
right [14] 3/11 3/16 3/22 5/15 6/18 7/15
8/6 11/18 12/2 12/6 12/7 13/7 15/7
15/17
rights [2] 4/5 6/16
risk [1] 9/19
RMR [1] 1/19
road [1] 3/14
Rule [1] 7/20

**S**

said [4] 3/19 17/9 17/13 17/15
sanctions [2] 3/8 7/24
say [2] 6/25 7/1
saying [1] 12/2
school [1] 5/7
sealed [2] 2/3 2/24
second [1] 13/20
see [1] 12/7
seek [1] 6/12
seeking [1] 9/17
seemed [1] 14/23
self [4] 10/5 10/8 10/21 10/22
self-surrender [3] 10/5 10/21 10/22
self-surrendered [1] 10/8
sentenced [1] 10/4
serious [2] 9/19 10/17
session [1] 11/18
set [2] 2/5 11/9
short [1] 8/25
shorthand [2] 17/6 17/14
shortly [1] 10/7
sick [1] 3/19
silent [1] 6/18
sir [15] 4/2 4/12 4/16 4/21 5/5 5/17
6/16 7/2 7/7 7/9 11/19 11/20 12/17
15/5 15/12
situation [1] 13/13
so [13] 3/19 4/12 4/21 7/23 8/18 9/4
10/14 10/15 11/19 12/14 12/19 15/18
16/1
some [2] 9/20 14/14
sooner [1] 12/10

**Sorry** [2] 8/15 9/5
sort [1] 5/14
speak [2] 4/18 4/19
specific [2] 6/3 14/25
specificity [1] 14/22
spoken [2] 10/25 15/9
staff [1] 2/11
stage [4] 7/17 14/15 15/2 15/15
stand [1] 3/10
starting [1] 2/8
state [1] 5/3
statement [3] 6/19 6/20 6/22
STATES [14] 1/1 1/3 1/9 1/11 1/20 2/4
5/20 6/4 6/11 7/20 9/25 13/13 17/4
17/8
statute [1] 11/25
statutorily [1] 11/20
staying [1] 2/23
stemmed [1] 14/23
stenography [1] 1/24
step [1] 16/1
steps [1] 4/10
Street [1] 1/12
strictly [1] 3/6
subject [3] 10/10 10/14 14/17
submit [3] 9/22 12/10 16/6
subscribed [1] 17/17
substance [1] 5/10
Suite [1] 1/17
summary [1] 14/11
supervised [2] 5/25 6/9
sure [6] 4/5 4/15 9/7 12/15 13/5 15/9
surrender [3] 10/5 10/21 10/22
surrendered [1] 10/8
swear [1] 3/9
sworn [1] 3/12

**T**

take [2] 9/7 11/4
taken [2] 4/17 17/14
talk [1] 4/10
tape [1] 17/15
tell [3] 4/20 9/1 9/8
ten [1] 6/6
term [4] 5/21 5/25 6/5 6/9
testimony [1] 17/7
than [6] 5/22 5/22 6/1 6/6 6/6 6/9
Thank [3] 3/25 4/24 12/21 14/10 16/12
16/14
that [58]
that's [4] 3/24 9/6 9/6 11/23
them [4] 4/23 6/25 12/20
then [3] 4/9 12/5 16/5
there [5] 3/20 3/21 11/7 14/1 15/21
there's [1] 16/10
these [4] 3/6 6/21 9/2 11/23
they [4] 10/1 11/22 14/4 14/6
they're [3] 12/1 12/2 12/3
things [1] 13/17
think [1] 10/23
this [35]
those [2] 6/17 15/1
though [1] 14/1
three [5] 6/1 6/9 9/21 11/3 11/20
three-day [3] 9/21 11/3 11/20
through [2] 12/6 16/6
ties [1] 9/25
time [10] 3/1 4/11 11/1 11/10 11/20
11/22 11/24 12/25 13/19 14/14
timely [1] 7/23

**today** [6] 3/18 3/23 4/3 4/8 8/6 9/20
today's [3] 3/15 3/25 5/12
together [1] 17/16
traceable [1] 6/15
transaction [3] 5/23 6/7 10/7
transactions [1] 6/2
transcribed [1] 17/5
transcript [3] 1/8 1/24 17/13
transferred [2] 10/9 10/12
trial [1] 10/24
twice [2] 5/22 6/6
two [4] 5/18 6/2 6/15 7/6
two-count [1] 5/18
typically [2] 4/21 11/23

**U**

U.S [3] 2/11 2/13 13/10
ultimately [1] 10/3
under [4] 3/18 5/13 10/12 11/25
understand [8] 5/12 7/2 7/9 8/2 8/3 9/4
9/7 14/4
understanding [1] 8/5
UNITED [14] 1/1 1/3 1/9 1/11 1/20 2/4
5/20 6/4 6/11 7/20 9/25 13/13 17/4
17/8
unlawful [1] 6/3
unseal [1] 3/1
UPADHYAYA [1] 1/8
upon [1] 17/7
us [3] 3/23 11/4 13/17
USC [2] 6/12 9/18

**V**

value [3] 5/23 6/7 6/13
versus [3] 2/4 7/22 17/9
Very [5] 3/2 7/18 9/12 11/13 13/9
via [2] 2/19 17/5
violation [3] 3/7 5/20 6/4
visit [1] 13/16

**W**

wait [1] 12/10
waive [3] 3/22 3/24 8/21
waiver [4] 14/6 14/20 15/4 15/18
want [4] 3/19 4/6 10/19 13/17
wanted [2] 13/20 14/7
warrant [1] 2/6
was [9] 10/2 10/4 10/4 10/10 10/13
10/14 10/20 10/21 13/24
Washington [4] 1/4 1/13 1/17 1/21
way [1] 11/17
we [20]
we'd [1] 9/21
we'll [1] 4/9
we're [6] 3/17 4/2 4/8 9/20 12/10 14/16
we've [1] 14/18
weather [1] 3/18
welcome [1] 16/13
well [11] 3/2 4/20 7/18 9/12 11/3 11/13
12/6 13/9 15/3 15/7 15/17
what [8] 3/14 4/2 4/20 9/14 11/10 12/2
12/17 15/11
what's [1] 9/8
when [3] 10/8 11/24 14/14
whereof [1] 17/17
whether [3] 7/12 7/13 12/15
which [7] 4/4 6/24 10/2 10/14 14/22
16/2 16/7
whichever [1] 5/24
while [1] 6/21

## W

who [1] 3/5
who's [1] 13/11
will [13]  3/2 3/24 6/12 7/15 9/12 12/1
 12/5 15/20 16/2 16/3 16/5 16/7 16/10
witness [1]  17/17
worth [1]  10/9
would [9]  5/11 7/12 7/13 8/5 10/23 11/3
 12/24 14/8 15/9
written [1]  15/3

## Y

years [5]  5/6 5/22 6/1 6/6 6/9
yes [14]  7/3 7/10 7/17 8/3 8/7 8/20 8/23
 9/6 11/6 11/8 11/16 13/1 15/6 15/20
you [83]
you're [1]  4/15
you've [3]  6/22 6/24 15/11
your [51]
yourselves [1]  2/7

## Z

Zoom [1]  2/19