# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## No. 23-3082

## UNITED STATES OF AMERICA,

Appellee

v.

## FIROZ PATEL,

Appellant.

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## APPELLANT'S REPLY TO APPELLEE'S MEMORANDUM OF LAW AND FACT

A. Jeff Ifrah, D.C. Bar No. 456661
Jacob F. Grubman, D.C. Bar No. 1510784
Ifrah Law
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20010
(202) 524-4140
*Counsel for Appellant Firoz Patel*

**District Court No. 1:23-cr-00166**

**Request for Oral Argument**

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

DISCUSSION .......................................................................................................... 2

I.   The Evidence Fails to Establish that Appellant Possessed the Requisite Criminal Intent and, Therefore, Weighs Against Pretrial Detention ................................................................................ 2

II.   The Government Has Provided No Evidence that Any Assets at Issue are Traceable to the Operation of an Unlicensed Money Transmittor or the Proceeds Thereof ..................................... 5

III.   The Government's Assertion that Appellant is a Flight Risk is Based on Unsubstantiated Factual Claims ......................................................................................................................... 9

CONCLUSION ...................................................................................................... 12

## INTRODUCTION

The facts of this case illustrate that Appellant has consistently complied with all court appearance requirements – a fact admitted by the Government on several occasions. Yet, the Government now asks this Court to disregard Appellant's history of compliance and adopt a presumption of guilt as the basis for Appellant's detention. Indeed, the Government's Opposition ("Opp.") addresses the alleged offense as if Appellant's guilt were a foregone conclusion. This could not be further from the truth. The weight of the evidence, even as proffered by the Government, fails to establish that Appellant possessed the requisite criminal intent or that the funds at issue were subject to forfeiture. Under these circumstances, the Government's argument that detention is warranted based on the weight of the evidence entirely misses the mark.

Furthermore, as the Government admits, Opp. 12, it has the burden of proof. Yet, the Government makes several broad characterizations without any factual substantiation. Without proffering a shred of evidence, the Government asserts that Appellant should be considered a flight risk because he has access to "additional cryptocurrency and bank accounts in multiple countries, all of which gives him access to millions of dollars." Opp. 25. Although the Government is permitted to proceed by way of proffer, it must not be permitted to deprive Appellant of his liberty based wholly on conjecture and speculation.

1

For these reasons, Appellant respectfully requests that this Court reverse the District Court's pretrial detention order. Alternatively, the Court should remand to the District Court for it to consider conditional release.

## DISCUSSION

### I. The Evidence Fails to Establish that Appellant Possessed the Requisite Criminal Intent and, Therefore, Weighs Against Pretrial Detention.

Underlying the instant detention proceeding is the Government's allegation that Appellant transferred 450 Bitcoin ("BTC") in violation of 18 U.S.C. § 1956(a)(1)(B) and § 1957(a). Violation of § 1956(a)(1)(B) requires proof that the defendant acted knowingly – i.e., that the transaction was *designed* to "conceal or disguise the nature, the location, the source, the ownership or the control *of the proceeds of specified unlawful activity*," or "to avoid a transaction reporting requirement." 18 U.S.C. §§ 1956(a)(1)(B)(i)-(ii)(emphasis added). Similarly, to be convicted under § 1957(a), the defendant must "knowingly engage[] . . . in a monetary transaction in criminally derived property." *Id.* § 1957(a). The graveman of the charge is that the BTC was subject to the District Court's forfeiture order.

A defendant acts knowingly when he "realized what [he] was doing and was aware of the nature of [his] conduct." *U.S. v. Alston-Graves*, 435 F.2d 331, 337 (D.C. Cir. 2006). Here, to evaluate whether Appellant possessed the requisite criminal intent, it is necescary to evaluate the terms of Appellant's plea agreement with the

2

Government in *United States v. MH Pillars Ltd., et al.*, 18-cr-053 (RDM) ("*MH Pillars*"), and the corresponding order of forfeiture.

The Final Judgment entered against Appellant in *M.H. Pillars* contemplated only specific forfeiture. Appellant was ordered to forfeit a money judgment in the amount of $4,640,459.95 which reflected,

> $4,000,100 of Payza funds seized on or about November 2013; $100,000 of Payza funds seized on or about February 2014; $250,359.45 of Payza funds seized on or about June 2016; all funds restrained on or about December 2016 in the United Kingdom from accounts at Global Reach Partners related to Payza in the name of Damaras Limited; all funds restrained on or about June 2017 in the United Kingdom from accounts at HSBC bank related to Payza in the name of Damaras Limited; [and] $270,000 of Payza funds seized in or about April 2019 . . .

*MH Pillars*, ECF 136 at 8.

By contrast, in the instant proceedings, the Government puts forth a broad interpretation of Appellant's forfeiture obligations, asserting that "all of Payza's assets were subject to forfeiture as property 'involved in' a business operating in violation of 18 U.S.C. § 1960 and 18 U.S.C. § 1965." Opp. 24. In doing so, the Government relies on a Final Forfeiture Order entered by the Court on November 17, 2020 which states that "any property, real or personal, involved in the commission of Count One, and any property traceable to such property…" is forfeitable. *MH Pillars*, ECF 132. But even that language is not so broad as the

3

Government now contends – i.e., that *all* assets of Payza are subject to forfeiture – and that order was never made part of Appellant's sentence.

Fed. R. Crim. P. 32.2(B)(4) requires that any forfeiture be made part of the sentence. *Id.* ("The court must also include the forfeiture order, directly or by reference, in the judgment[.]"). As discussed above, the language of the Sentencing Judgment contemplates only the forfeiture of particularly identified assets – not "any property, real or personal, involved in the commission," of Appellant's offense. *Id.*, ECF 132 at 1. Given these circumstances, the language relied upon by the Government is not applicable.

The record also demonstrates that Appellant could not have been aware that the transfer of the BTC could qualify as a violation of the Court's Order or be characterized as an attempt to conceal funds from forfeiture. Rather, the BTC at issue did not fall within the categories of forfeitable assets described within the Sentence entered against him. *See MH Pillars*, ECF 136. Furthermore, as discussed in greater detail below, there is no evidence that the BTC at issue was derived from Appellant's operation of a U.S. money transmitting service. Nor is there any evidence that the BTC was the proceeds of U.S. money transmission activity. Accordingly, Appellant could not have been aware that the nature of his conduct could be violative of 18 U.S.C. § 1957. Simply put, the evidence shows that Appellant did not act knowingly, as required for conviction under 18 U.S.C. §

4

1956(a)(1)(B) and § 1957(A). *Morissette v. U.S.*, 342 U.S. 246, 252 (1952) (recognizing that "wrongdoing must be conscious to be criminal," because crime requires the "concurrence of an evil-meaning mind with an evil-doing hand."). Under these circumstances, the weight of the evidence weighs against pretrial detention.

II. **The Government Has Provided No Evidence that Any Assets at Issue Are Traceable to the Operation of an Unlicensed Money Transmittor or the Proceeds Thereof.**

Even assuming the broad and generic language of the Final Forfeiture Order applies, despite not having been incorporated into the Sentencing Judgment as required, the Government has provided no proof that any of the BTC at issue is traceable to Appellant's unlawful operation of a U.S. money transmitting service or the proceeds thereof. This condition is a prerequisite for forfeiture even under the broader language of the Final Forfeiture Order.

Appellant pled guilty to conspiracy to commit crimes against the United States in violation of 18 U.S.C. § 371. *MH Pillars*, ECF 136. This crime, as alleged, involved unlicensed money transmission *in the United States*. Specifically, the Government alleged that "the object of the conspiracy to conduct, control, manage, supervise, direct, and own money transmitting businesses that operated without the requisite licenses…". Accordingly, the offense necessarily pertains *only* to

5

unlicensed money transmission activity in the United States.[1] Yet, the Government has shown no evidence that the BTC at issue was the product of unlicensed money transmission within the United States. Notably, Payza was licensed in Canada, Europe, and India, among other places. Indeed, as alleged by the Government, Appellant transferred BTC from foreign accounts to another foreign account with no allegation that those assets were derived from U.S. money transmission activity. Accordingly, even if binding, the Final Forfeiture Order is not applicable to the BTC at issue here (and, indeed, Appellant is innocent).

Contrary to the Government's arguments, Opp. 9-10, the Final Forfeiture Order did not apply to *all* property of Payza; it applied only to "any property … involved in the commission of Count One, and any property traceable to such property…" *Id.*, ECF 132. To have been involved in, or the proceeds, of *unlicensed* money transmission, the property would have had to have been used or transmitted through the United States. Ignoring this, the Government now alleges that the "whole business was a criminal enterprise" and that the "whole business was charged." *Id.* That is not, however, what the prior charges against Appellant alleged. Not surprisingly, therefore, Appellant's plea was not so broad, and his sentence said no such thing.

---

[1] All U.S. account holders were accounted for in the specific forfeiture ordered by the Court.

Nothing in any of the forfeiture orders applied to "all" property of Payza. Opp. 24. Indeed, language stating that (i) the worldwide business of Payza was criminal and/or (ii) that all its property, wherever located, is forfeitable, is simply not in any of the sentencing judgments or (the likely void) forfeiture orders. Similarly, no order said that Appellants' assets, or assets as to which he was a custodian, were somehow forfeitable despite not being proceeds of any U.S. transaction. Appellant could not have been on notice that *any* transfer of non-U.S. assets could possibly violate his Sentencing Judgment because there is no rational argument that transfer of foreign assets that were not the product of U.S. transmissions were the proceeds of the crime for which Appellant was sentenced.

The Government also incorrectly contends that Appellant no longer argues that the BTC cannot be traced to Payza. Opp. 23. Appellant does not, and has never conceded, that the BTC at issue can be traced to Payza. For purposes of considering the nature of the offense and pretrial detention, however, Appellant need not address that issue because the Government has not even alleged that the assets are the proceeds of the unlicensed U.S. money transmission that was the subject of Appellant's sentence. As discussed above, the Government must show that the funds passed through the United States because that is the only property as to which the forfeiture order could have applied – if at all. The Government has wholly failed to do so.

The Government suggests that the Court should disregard Appellant's arguments as to the source of the funds at issue given that 18 U.S.C. § 3142(g)(3)(B) "merely speaks of the need for the district court to consider [Appellant's] status 'at the time of the current offense or arrest.'" Opp. 14. Despite relying on a presumption of guilt, the Government contends that the merits of the underlying charges are irrelevant to the Court's pretrial detention analysis and instead should be left for trial. *Id.* This argument ignores the fact that two of the four factors that the Court must consider under the Bail Reform Act are (1) the nature and circumstances of the offense charged; and (2) the weight of the evidence against the defendant. 18 U.S.C. §§ 3142(g)(1)-(2). Were the Court to accept the grand jury's indictment without question, as the Government suggests the Court should do here, the consideration of these factors under § 3142(g) would be meaningless. *See United States v. Taylor*, 289 F.Supp.3d 55, 59 (D.D.C. 2018) (holding that "the second factor of the detention analysis under Section 3142 – the weight of the evidence – focuses on the evidence the government may present at trial."). Furthermore, under the Government's theory, nearly *every* request for pretrial release would be rejected because the Court would accept the grand jury's indictment as proof that the weight of the evidence and the facts and characteristics of the case favor detention. This argument is illogical and disregards the Bail Reform Act's presumption in favor of pretrial release. *United States v. Taylor*, 289 F.Supp.3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*,

8

608 F.3d 939, 945 (6th Cir. 2010)) ("'The default position of the law, therefore, is that a defendant should be released pending trial.'").

### III. The Government's Assertion that Appellant is a Flight Risk is Based on Unsubstantiated Factual Claims.

Much of the Government's argument that Appellant is a fight risk relies on the assertion that Appellant has access to substantial funds which would allow him to escape this Court's jurisdiction. *See* Opp. 7. This argument misses the mark for several reasons.

As an initial matter, the Government offers no evidence to substantiate its claim that Appellant has access to "millions of dollars," which would be sufficient to finance his flight from prosecution. *Id.* The Government neither names any financial institutions at which Appellant allegedly holds accounts nor suggests how Appellant would gain access to these alleged funds. Although the Government is permitted to proceed by way of proffer, it may not speculate without proper factual support. *United States v. Michel*, Criminal Action No. 19-148-1 (CKK), 2023 WL 2388501, at *7 (D.D.C. Mar. 6, 2023) (quoting *United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014)) ("More importantly, a court cannot accept a proffer based upon "only **speculation**.") (emphasis in original).

The Government also improperly dismisses Appellant's contention that the imposition of conditions would suffice to reasonably assure Appellant's appearance at future proceedings. Regarding the availability of a trusted third-party custodian,

9

Mr. Nisar Ahmed, the Government argues that Appellant's "transfer of large amount of funds while pending self-surrender – along with the deceptive way in which he interacted with Blockchain – suggest that no third party would be able to prevent [Appellant] from marshaling significant funds and fleeing jurisdiction without that third party's knowledge." Opp. 16. This Court considered and rejected a similar argument in *U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996). There, the Court explained that the "magistrate judge and district court referred several times to the notion that if the defendant were to flee, his supervisors could not stop him." *Id.* at 444. However, the Court continued, "[t]hat, of course, is true of every defendant released on conditions; it also is not the standard authorized by law for determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it.'" *Id.* The *Xulam* Court revoked the district court's order of detention, finding that the lower court had committed a "serious error" in rejecting the defendant's proposed third-party custodians. *Id.* at 444. Similarly, there is no reason to conclude that Appellant's proposed third-party custodian would be insufficient to reasonably assure Appellant's appearance at future court proceedings.

The Government's unsubstantiated speculation should not undercut Mr. Ahmed's history as an effective custodian. Mr. Ahmed supervised Appellant's brother, Ferhan Patel, for seven months during the proceedings in *MH Pillars*. *See*

*MH Pillars*, ECF 19. Notably, during that period of time, Ferhan Patel arguably had greater access to funds and cryptocurrency than Appellant does now. Despite Mr. Patel's access to substantial funds, Mr. Ahmed satisfactorily supervised Mr. Patel and assured his appearance at all requisite court proceedings.[2] There is no reason to conclude that a different result would occur here.

Similarly, the Government asserts that Appellant's suggested custodian was properly rejected by the District Court given that Appellant failed to put forth sufficient detail "regarding that plan." Opp. 25. As an initial matter, the District Court's Order is entirely silent as to the level of detail required for a custodian to be considered sufficient to reasonably assure Appellant's appearance. Furthermore, if there is a concern about the level of detail provided, Appellant is more than willing to supply supplemental information about Mr. Ahmed's qualifications, reputation, and commitment to ensuring Appellant's continued compliance with the Court's Order. Indeed, like Appellant, Mr. Ahmed has a proven track record of compliance with the Court's appearance requirements.

---

[2] Based on Mr. Patel's compliance with all court appearance requirements, the District Court adjusted his pretrial release conditions, allowing him to return to Canada pending trial.

11

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court reverse the District Court's order revoking Appellant's previous release order or, in the alternative, remand for reconsideration.

Dated: July 11, 2023

Respectfully submitted,

IFRAH LAW

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah (D.C. Bar No. 456661)
Jacob F. Grubman (D.C. Bar No. 1510784)
1717 Pennsylvania Ave. NW
Ste. 650
Washington, D.C. 20010
(202) 524-4140
jeff@ifrahlaw.com
jgrubman@ifrahlaw.com

*Counsel for Appellant Firoz Patel*

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing Reply contains 2,599 words and, therefore, complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C). The foregoing Reply has been prepared in 14-point Times New Roman, a proportionally spaced typeface, in compliance with Fed. R. App. P. 27(d)(1)(E).

Dated: July 11, 2023                                        Respectfully submitted,

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah

*Counsel for Appellant Firoz Patel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July I have served a copy of the foregoing Reply on all counsel of record via the Court's ECF System.

Dated: July 11, 2023                    Respectfully submitted,

                                        */s/ A. Jeff Ifrah*
                                        A. Jeff Ifrah

                                        *Counsel for Appellant Firoz Patel*